CHARLES L. SASSO, JR. *v.* ALCIDE AYOTTE ET AL.

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued October 5—decided November 9, 1967

*Thomas L. Brayton* and *John D. Mahaney,* for the appellant (plaintiff).

*Walter R. Griffin,* for the appellees (defendants).

THIM, J. The plaintiff instituted this action seeking damages. He alleged that, because of the unskilful and negligent manner in which the defendants had drilled a well on the plaintiff's property, the well water had become contaminated.

The case was tried to a jury, which returned a verdict in favor of the plaintiff against both defendants. On motion by the defendants, a judgment notwithstanding the verdict was rendered in their behalf. From this judgment the plaintiff has appealed. He asserts that there was sufficient evidence from which the jury could reasonably have concluded that the defendants had drilled the well in an unskilful and negligent manner and thereby exposed the well to contamination.

In reviewing the action of the court in rendering the judgment, we consider the evidence in the light most favorable to the plaintiff. *Pelletier* v. *Bilbiles,* 154 Conn. 544, 546, 227 A.2d 251; *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 499, 208 A.2d 748.

The jury could reasonably have found the following facts: In April, 1962, the plaintiff and the defendants entered into a written agreement whereby the defendants agreed to construct a house for the plaintiff on Lynwood Drive in Wolcott. In connection therewith, the defendants undertook to provide a well on the premises.

The construction of the house, including the drilling of the well, was completed in July, 1962. The plaintiff and his family took possession of the house in the latter part of that month. After the plaintiff and his family moved into the house and began to use the water which the well provided, the general health of the family began to worsen.

The plaintiff's well was in his front yard. In January, 1963, the plaintiff asked the defendant Louis Albert about the location of the septic tank which serviced the house next door which was uphill and to the left of the plaintiff's house. Albert told the plaintiff that the septic tank was located in the yard in front of that house and that the plaintiff's well had been placed fifty feet from that tank.

For some weeks the plaintiff noticed that the water being drawn from his well was foamy. The situation grew worse. In June, 1963, a toilet fixture became stuck and the continuous water flow caused the water to foam so much that the foam overflowed from the toilet bowl and tank onto the bathroom floor. The plaintiff notified Albert of this occurrence. Albert, after viewing the situation, agreed with the plaintiff that detergents were causing the foam. The plaintiff then had the well water analyzed. The analysis indicated that the water contained not only detergents but also organic waste materials, which indicated that the well was being

polluted by seepage from a waste disposal system. The plaintiff notified the defendants of the pollution and requested that they remedy the situation. They refused to take any action. The plaintiff then employed John Sima, a well driller, to ascertain the source of the pollution and to correct the condition.

Sima uncovered the well which the defendants had provided. He measured its depth to be 115 feet. He bailed the water out of the well and found it was "nothing but suds." Both Sima and the plaintiff inspected the wall of the well with the aid of a mirror. This inspection disclosed that the metal casing which had been used in drilling the well extended only nineteen feet into the well. About eleven feet below the end of the casing was an irregular and broken formation of rock. Foamy water was entering the well from what appeared to be a fracture or jagged opening in this formation.

After making these observations, Sima then took steps to correct the situation. First, he pulled the nineteen-foot casing out of the well. Then he reamed the well hole out from six to eight inches in diameter down to a point forty-eight feet below the surface of the land. At that point he felt that he had reached a solid rock ledge. He then lowered a new metal casing into the well and sealed the casing off at the forty-eight-foot level where it was seated on the solid ledge. Sima then proceeded to clean out the well hole. After the cleaning was accomplished, the well remained dry, which indicated that the only water which had been entering the well had been coming from the rock fracture at the thirty-foot level and that this had now been effectively sealed off. Sima then proceeded to drill for a new source of water, which was found at the 350-foot level.

This water was potable. After the plaintiff and his family ceased to drink the water which the original well provided and began using the water which the deeper well provided, the family's health returned to normal.

When the defendants undertook to drill the well, they were under a duty to exercise that degree of care which a skilled well driller of ordinary prudence would have exercised under the same or similar conditions. See *Goodrich Oil Burner Mfg. Co. v. Cooke,* 126 Conn. 551, 553, 12 A.2d 833; *Ferrie* v. *Sperry,* 85 Conn. 337, 343, 82 A. 577. A party may be liable in negligence for the breach of a duty which arises out of a contractual relationship. See *Urban* v. *Hartford Gas Co.,* 139 Conn. 301, 304, 93 A.2d 292; see also *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 410, 207 A.2d 732.

In the present case, neither of the defendants offered any testimony concerning the drilling of the well. The plaintiff through his witness, Sima, a well driller, did, however, offer testimony on this subject. Sima testified that the lot to the left of the plaintiff's property was on the top of an outcropping of rocky ledge which underlies the properties in the general area. The plaintiff's property is lower on the slope of the hill. Sima was of the opinion that the plaintiff's well should not have initially been placed in the plaintiff's front yard because of the underlying ledge and the fact that the septic tank for the house next door would require a seepage area which it would not get where there was a ledge. Sima could not, however, drill a new well in the back yard of the plaintiff's property because the septic tank system was located there. Sima stated that, given the characteristics of the area in front of the plaintiff's house, special pre-

cautions had to be taken to guard against the possibility of pollution. Sima testified that it was the practice when drilling a well in an area such as this to sink the casing of the well down into the solid underlying ledge itself. Sima was of the opinion that the solid ledge was some forty-eight feet below the surface of the ground and that therefore he used a metal casing forty-eight or more feet long which he sealed at the forty-eight-foot level when it was seated on the solid ledge.

From this testimony, the jury could reasonably have concluded that the defendants had failed to exercise that degree of care which a skilled well driller of ordinary prudence would have exercised under these circumstances. *Goodrich Oil Burner Mfg. Co.* v. *Cooke,* 126 Conn. 551, 553, 12 A.2d 833; *Ferrie* v. *Sperry,* 85 Conn. 337, 343, 82 A. 577. There was sufficient testimony to indicate that, because of the peculiar configuration of the substratum in this area and the location of an existing septic system in close proximity to the well drilling site, a skilled well driller of ordinary prudence would have used a well casing which would be long enough to reach the underlying solid rock ledge. The nineteen-foot casing which the defendants had installed was obviously inadequate, especially in view of the fact that at the thirty-foot level the substratum was fractured and broken and that this irregularity could readily be seen from the surface of the ground. The jury could reasonably have concluded that the use of this casing by the defendants, in view of the conditions which they knew or should have known existed, amounted to negligence. *Cackowski* v. *Jack A. Halprin, Inc.,* 133 Conn. 631, 636, 53 A.2d 649. Also, there was sufficient evidence from which the jury could reasonably

have found that the use of this inadequate casing allowed the well to become polluted by seepage from a waste disposal system.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff on the verdict.

In this opinion the other judges concurred.