JUSTIN STRICKLAND *v.* JOSEPH E. PERRUCCIO ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 9-655-2551

Argued June 12, 1967—decided February 2, 1968

*A. Robert Gordon,* of Middletown, for the appellants (defendants).

*Theodore J. Raczka,* of Middletown, for the appellee (plaintiff).

DEARINGTON, J. This action was brought on a common counts writ to recover the value of services rendered and materials furnished the defendants by the plaintiff in the installation of a septic tank system on property of the defendants as set forth in a bill of particulars. In their answer, the defendants deny the claim and by way of a counterclaim allege that the plaintiff failed to perform the work according to his agreement; that the installation was performed in an unworkmanlike manner; that the plaintiff broke his warranty of fitness; and that he did defective work and then abandoned it and it became necessary to hire another contractor to complete the original agreement. The defendant Joseph acted for both himself and the codefendant, his wife, and he will be hereinafter referred to as the defendant. In his reply, the plaintiff left the defendants to proof of their allegations.

The defendants have assigned error in the denial of their motion to correct the finding by adding

thereto some fifty-one paragraphs containing facts claimed to have been admitted or undisputed. In addition, error is also claimed in the court's rejection of certain testimony as well as in all of the court's conclusions.

Although the defendants sought many corrections in the finding, it is apparent that the finding as rendered is adequate to review their assignments of error. Some of the assignments which were directed to the finding relate to evidence claimed to have been elicited from an expert witness for the defendants, Marvin L. Smith, of the state health department, who qualified as a sanitary engineer. The questions asked him by the defendants related to the application of certain regulations appearing in a pamphlet of the state department of health entitled "Private Sub-Surface Sewage Disposal" and admitted into evidence. Some of the questions were of a hypothetical nature, while others dealt with possibilities. Still other questions sought answers of little probative value without there first having been evidence of the soil seepage rate, and there was no evidence of that. As to the effect of uncontradicted testimony of an expert, see *Chazen v. New Britain,* 148 Conn. 349, 352, and cases cited in Holden & Daly, Connecticut Evidence § 118c.

It appears that the defendants were attempting to show that the plaintiff in some measure violated the state health code and that such conduct was negligence per se. Parenthetically, it might be noted that the counterclaim contains no allegation relating to a violation of the health code; however, the evidence appears to have come in without objection by the plaintiff. Perhaps the most enlightening evidence on this matter was elicited from Smith on direct examination. He was asked a hypothetical question which included physical characteristics

similar to those of the locale, and the question sought an answer as to the applicability of regulations of the health code in the installation of a sewage disposal system under the conditions described. The witness answered: "In accordance with the regulations, any part of a subsurface sewage disposal system must be at least 10 feet from the lot lines. In this particular case and which would look to be simplified for a statement, let's talk about a 16 percent grade instead of a 100 foot in 600 foot grade. There is nothing in the regulations that would prohibit the installation of the seepage area on this type of a lot providing ground suitable . . . the necessary distance relative to lot lines can be maintained and that as a matter of installation for proper functioning, one would instal a curtain drain on the west side of the lot to intercept any surface drainage that might be coming down the 16 percent slope from the adjacent ground. It would appear that in the absence of such a drain, difficulty might then be encountered with the satisfactory operation of a seepage area, be it trenches, bed or leaching pit." The witness also testified as to the distinction between a permit town and a no-permit town and stated, "I am referring to a building permit; no building permit is issued unless the method of sewage disposal has been approved by the local director of health or his agent." The court found a building permit had been obtained by the defendant. Upon such evidence as this, it cannot be said that the court erred in denying the defendants' requests to correct the finding to accord with the defendants' theory that the plaintiff failed to conform to the minimum requirements of the state department of health.

The finding, which is not subject to correction, indicates that in the spring of 1964 the defendants were in the process of building a dwelling house on

a lot owned by them which had a 100-foot frontage and a depth of 220 feet. The lot was at or near the foot of a slope of 16 degrees, consisting of a rise in grade westward of 100 feet in a distance of 600 feet. The plaintiff was initially hired to bring in fill. Thereafter, the defendant requested him to instal a septic tank system. There were no plans or specifications, and it was understood by the parties that the plaintiff would perform the work as he thought best. A building permit was obtained by the defendant. The plaintiff was engaged in the business of excavation and also installing septic tank systems in the area. He had installed many systems and was familiar with the state regulations as contained in the department of health publication entitled "Private Sub-Surface Sewage Disposal," dated May, 1964, and then in effect. Whenever possible he followed the state regulations. No soil test was made, and the defendant was warned by the plaintiff that he, the defendant, had a potential trouble spot because of poor drainage. The plaintiff recommended two systems, a small 300-gallon tank system including a trench 3 feet wide and 50 feet long, to service utilities in the basement, and a 1000-gallon tank together with a seepage bed 10 feet wide and 50 feet long, to service the upstairs utilities. The trenches were filled with crushed stone and covered with tar paper, and the excavated area was back filled. The plaintiff completed his work and was of the opinion the system was in working order and suitable for the defendants' home. About a month after the installation, a heavy rain resulted in an accumulation of surface water which caused the small system to back up, and the functioning of the large system was impaired. At the request of the defendant, the plaintiff returned, and on observing the conditions he recommended that, when the ground dried sufficiently to allow equipment to go

on the property, a curtain drain be installed along the westerly boundary to divert the flow of surface water from the seepage fields. The plaintiff was not requested to perform this work. The drainage situation recurred after heavy rainfalls. Some months later, the defendant hired another contractor, James G. LaRosa, and he examined the premises sometime in July, 1965. To correct the condition, he used leaching trenches rather than seepage beds, raised the tank, and installed a curtain drain. The cost of this work and additional work to correct and repair the system increased the total in all to $1452.57, which was found to be reasonable by the court.

The court concluded: The faulty operation of the septic system arose from the flow of surface or subsurface waters onto the defendants' land from surrounding land because of the topography of the area. These conditions were not caused by improper installation or deficient workmanship or failure of performance. The defendants failed to meet their burden of proof in establishing their counterclaim. There was no express guarantee or implied warranty on the plaintiff's part that the system would function under all conditions.

The defendants took exception to several of the court's rulings on evidence. A defendants' witness was asked on direct examination, "And what is the custom in the trade as far as the contractor is concerned prior to installing the sanitary system?" The witness answered the question at some length. Later, the witness was asked by the defendants, "Now, in regard to, not talking about building permits, but in regard to talking about the sewage disposal system, what is the practice in the trade concerning the contractor, the sewage disposal contractor?" The court ruled that the question had been

answered. An examination of the entire transcript exhibit on this matter satisfies us that the question had been answered and the court did not abuse its discretion in so ruling. Error is claimed in the court's sustaining of an objection to a question by the defendants seeking to elicit from the witness whether, with his experience, he would have installed the system in question without also utilizing some method to prevent surface water from coming down to the level in the system. The court reasoned that an answer would be conjectural since the witness had not examined the property at the time the system was installed. The determination whether the circumstances involved were substantially similar was for the trial court, and its judgment will not be found erroneous unless clearly and manifestly so. *Wilkins* v. *G. Fox & Co.,* 125 Conn. 738, 739. Furthermore, no foundation had been established, the witness had not qualified as an expert, and the question tended to be hypothetical in nature. The ruling was not erroneous.

The defendants' basic claims of error are directed to the court's conclusions. The substance of these conclusions is that the malfunctioning of the system was not caused by the plaintiff's fault by reason of improper installation, deficient workmanship or failure of performance but arose from the flowage of either surface or subsurface water onto the defendants' land from surrounding land because of the topography of the area. These findings are conclusive unless they are legally or logically inconsistent with the subordinate facts found, or involve the application of some erroneous rule of law material to the case. *Davis* v. *Margolis,* 107 Conn. 417, 422; Maltbie, Conn. App. Proc. § 166. The defendants contend that there was evidence showing that the plaintiff should have reasonably foreseen the situation which developed when surface water

flowed across the septic bed from the surrounding hills, and should have so installed the system as to prevent interference from such causes. In this respect, the defendants argue that such evidence indicated that there was a breach of an implied warranty of fitness and also a negligent installation, which facts, they argue, the court was bound to accept, and such acceptance would render the court's conclusions inconsistent. "A party may be liable in negligence for the breach of a duty which arises out of a contractual relationship." *Sasso* v. *Ayotte,* 155 Conn. 525, 529. Since the counterclaim alleged breach of contract and negligence, the defendants had the burden of proof in this respect. *De Santo* v. *Burkle,* 106 Conn. 677, 679. The contract to instal the septic system consisted merely of the defendant's oral request to instal it and the plaintiff's agreement to do the work. There were no plans or specifications. The plaintiff did not hold himself out as a sanitary engineer or expert on soil drainage. There was no guarantee to obtain a given result under all conditions. The degree of skill required of the plaintiff was that possessed by one of ordinary skill, competency and standing in the business. *Sasso* v. *Ayotte,* supra; 17 Am. Jur. 2d, Contracts, § 371.

The defendants offered evidence through Smith, who gave an opinion "to the effect that under the circumstances of ground and slope, my opinion is that the trenches should have been installed." LaRosa, when asked a hypothetical question as to whether he would take some precaution to prevent surface water from draining on a sanitary system if such a system was installed at a lower level than that of adjoining property, went no further than to state that he would make recommendations to the owner. We cannot hold that on this type of evidence the court erred in concluding that the defendants

had failed to meet their burden of proof by showing either a breach of contract or negligence, nor can it be said that the remaining conclusions find no reasonable support in the subordinate facts.

There is no error.

In this opinion MONKIEWICZ and MACDONALD, Js., concurred.