[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action under C.G.S. section 52-575 to have the court "determine the rights of the parties and render judgment determining the questions and disputes and quieting and settling the title to certain real property. They also seek an injunction.
The defendants here counterclaim seeking an injunction and damages.
Facts
The property in question (hereafter the Property) is shown as a long thin triangle between a north-south line of some 258 feet and a fence running from Hebron Avenue to land now or formerly of one Bednarz all as shown on Exhibit A. The base of the triangle, on Hebron Avenue is 18 feet more or less.
Plaintiffs commenced this action on December 15, 1988. Winston and Blanche DeMerchant (DeMerchants) acquired the title to certain property described as 1344 Hebron Avenue in Glastonbury, Connecticut (hereinafter 1344) by warranty deed dated August 16, 1959.
DeMerchants occupied and possessed 1344 as their residence continuously from 1959 to May 1984.
In 1961 or 1962 DeMerchants caused a chain-link fence to be constructed which ran along Hebron Avenue for the entire of 1344 frontage plus approximately 18 feet of the frontage of the Property.
In 1961 or 1962 DeMerchants constructed a wire fence CT Page 2396 along the southerly and easterly portions of 1344 and along the westerly line of the Property.
The wire fence had poles set in concrete and a wire mesh that attached to the poles.
The wire fence remained in place and unaltered except for weathering and painting from 1962 until the date of trial.
DeMerchant at all times when he was occupying and possessing 1344 considered all property lying within the boundaries of the above described fences as being owned by him.
From 1962 until May 1984 DeMerchant continuously maintained and controlled the 1344 lot and the Property. He roto-tilled the area in question several times; he continuously mowed the lawn on the Property; he planted trees on the Property; he painted the fence once; he removed abandoned property from the Property; he sprayed a tree in the area; he fertilized the lawn on the area; and he paved a portion of his driveway on part of the Property. For a continuous period of 22 years, Mr. DeMerchant maintained and controlled the Property, treated it as being owned by him, treated the fences as the boundary line and witnessed no one, including the Grasso's or their agents, ever making entry upon the area in question for any purpose, including making any claim.
The plaintiffs bought 1344 from DeMerchants by warranty deed dated May 31, 1984. At the time of that purchase Winston DeMerchant told Edward Carnelli that the fences represented the boundaries of the property that the DeMerchants were selling to the Carnellis.
At that time DeMerchants thought they were transferring and intended to transfer to Carnellis 1344 plus the Property.
The defendants bought a parcel of land located at 1346 Hebron Avenue, Glastonbury, Connecticut, (1346) from Ralph and Mary Dukett by warranty deed dated November 26, 1969. The description in that deed indicates that the easterly boundary line of 1346 is the westerly boundary line of 1344. Defendants are still the record owners of 1346.
Prior to the closing on 1344 Carnellis asked Grassos about the fence and boundary. Grassos said "what's on that side of the fence is Mr. DeMerchants and what's on this side is ours."
The map entitled Glastonbury Public Works, which is Exhibit 2, shows plaintiffs' land, #1344, to be 160 feet on CT Page 2397 Hebron Avenue which is some 14 feet longer than in the plaintiff's deed. That same exhibit shows defendants' land, #1346, to be 150 feet on Hebron Avenue which is the same as the deed to defendants. The Glastonbury tax assessor's office records show that Carnellis were assessed on a frontage of 160 feet. They paid taxes on the Property. DeMerchants erected all their fencing before defendants bought #1346. Defendants erected a wire fence along the front of #1346 up to the place of the most westerly post of DeMerchant's chain-link fence. That is, the defendants fenced their property some 18 feet short of their record title.
LAW
I. Burden of Proof.
When plaintiffs claim title to real property by virtue of adverse possession all of the requirements must be met by clear and convincing evidence. Schultz v. Syventson, 219 Conn. 81,91. This includes proof of tacking. (See Marquis v. Frost,155 Conn. 527, 332 which does not distinguish the burden.)
II. C.G.S. section 52-575.
The statute reads in pertinent part as follows:
 "No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues; and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless an action is commenced thereupon and prosecuted to effect within one year next after such entry. . ."
Plaintiffs have proven by clear and convincing evidence that they and the DeMerchants consecutively have been in continuous, open, notorious and adverse possession of the Property since at least 1962 through the date of trial.
The defendants and their predecessors in title were consecutively ousted from possession continuously by DeMerchants and plaintiffs open, visible and exclusive possession of the Property for a period of at least twenty-nine years.
III. Tacking.
Possession by the claimant must be continuous so that possession of the record title owner shall not intervene. Smith CT Page 2398 v. Chapin, 3-1 Conn. 530, 531. The continuity may be by one or more possessors as long as the adverse possession is continued uninterruptedly for at least fifteen years. Id. 531., Here it was.
IV. DeMerchants' Action
DeMerchants acquired title to the Property in question by open, visible and exclusive possession from August 27, 1959[1] thru June 1, 1984. The possession was not shared with anyone and was continuous.
DeMerchant by clearly pointing out the fences and the boundary lines they matched intended to and did transfer title to the Property to plaintiffs.
V. Attempted Agreement.
The court does not believe that plaintiff's attempt to settle this matter with a boundary line agreement, Exhibit 5, is really relevant. However, because defendants are so adamant in arguing from it the court will briefly address it.
First, it is a full exhibit and is treated as such by the court. Second, it is a clear claim by plaintiffs that they own the Property. Third, it is an attempt by plaintiffs to obtain a record title that matches their adverse possession title without the necessity of a court action. Fourth, Maria Grasso agreed to the boundary line but refused to sign the agreement. Fifth, title by adverse possession had already vested in plaintiffs on their predecessors in title. None of these help defendants. Finally, it is not an admission that plaintiffs do not own the land.
VI. Plaintiff's Actions.
As a result of walking with Winston DeMerchant along the fence, having him point out the line and talking with him plaintiffs expected to receive title to the Property.
In 1984, prior to the closing the plaintiffs were told by the defendants that the property on DeMerchants' side of the fence belonged to DeMerchants. That includes the Property.
VII. Defendant's Actions.
Nothing that defendants did prior to 1988 in anyway indicated they had any claim, right or interest in the Property. Defendants here failed to sustain their burden of proof in regard to each of their claims. CT Page 2399
This is as good a claim for adverse possession, with tacking, as one is likely to see.
In accordance with C.G.S. section 47-31f, the court determines that plaintiffs are the fee owners of 1344 and the Property as shown on Exhibit A and title is solely in them.
NORRIS L. O'NEILL JUDGE, SUPERIOR COURT