ROBERT E. JOHNSON ET AL. *v*. FREDERICK A. FLAMMIA
ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued June 6—decision released September 2, 1975

*David E. Kamins,* for the appellants (defendants).

*Herbert Watstein,* for the appellees (plaintiffs).

LONGO, J. The plaintiffs brought this action to recover damages resulting from the performance of a contract for the installation of a swimming pool on their property. The jury awarded damages in the amount of $9100 in favor of the plaintiffs. The defendants appealed from the judgment entered on the verdict, assigning error to the denial by the trial court of their motions for a directed verdict and to set aside the verdict.

The plaintiffs offered evidence to prove and claimed to have proved the following facts: In May, 1971, the plaintiffs discussed the purchase and installation of a swimming pool with the defendant John B. Cipriano, who, with the defendant Frederick A. Flammia, operated the Clearwater Pool Company. Cipriano represented to the plaintiffs that he was a pool engineer and an expert in the pool business. The plaintiff Robert E. Johnson stressed that the area where the pool was to be installed was very wet with a high water table, and

the defendant Cipriano assured him that there was no problem, since he had installed pools in worse areas. The plaintiffs relied heavily on the defendant Cipriano's representation that the pool would be installed properly and signed a contract agreeing to pay $5600 for the pool. The manufacturer's pool installation manual contained detailed installation instructions which the defendants were required to follow. Included among these instructions were the following: Because of seepage, the placing of the pool in low areas should be avoided; grading should permit surface drainage, rain water and pool splash to run away from the pool; backfilling should be done at approximately the rate of rise of the water on the inside, without exceeding the height of the water by more than six inches. Due to a few weeks of rain, the defendants were not able to commence excavation until the ground had dried to some extent. At the time of the backfilling, there was no water in the pool. After the backfilling, 48,000 gallons of water were put into the pool. The pool was completed some time in the middle of May, and no defects were found. Both the plaintiffs and the defendants agreed that the defendants had completed all of their obligations under their contract. Three weeks after the pool had been used without complaint, the plaintiffs observed, after a summer storm, mud and water entering the pool between the liner and wall panels at the deep end of the pool, and soon thereafter the pool started to buckle. The pool was drained, the defendants made necessary repairs and the pool was refilled. However, the pool again buckled, and the plaintiffs, at the suggestion of the defendant Cipriano, hired a contractor to dig a trench around a portion of the pool. After repairs were completed, rocks pushed

up against the liner bottom, and other defects appeared after the next rainfall. The plaintiffs consulted with a contractor who had twenty-four years of pool construction experience, including both concrete and liner pools and soil conditions. In his opinion, the conditions he found resulted from the entire area being saturated with water which caused excessive water pressure. To remedy the conditions, he estimated the cost to place the pool in proper condition, including a concrete floor with reinforced steel, would be $5200.

The defendants offered evidence to prove and claim to have proved the following: The representation made by the defendant Cipriano indicating that there would be no problem with the pool installation was made in good faith, based upon past experiences. The pool was properly installed, in accordance with the instructions in the manufacturer's manual, in the highest point in the plaintiffs' backyard, where the plaintiffs wanted it located. The defendants backfilled the pool with water going in as required in the manual; otherwise, the walls of the pool would have fallen down at the time of backfilling. The defendants recommended that the plaintiffs construct a curtain drain at the time the pool was installed to control any run-off that could arise, but the plaintiffs rejected this suggestion. The cost for this was not included in the contract price, nor was the providing of a curtain drain the responsibility of the defendants under the contract. The defendants installed the pool in accordance with reasonable standards of workmanship. In order to provide the plaintiffs with the type of pool for which they bargained, the cost of repairs would have been $1500, while the $5200 cost of repairs

estimated by the plaintiffs' contractor would provide the plaintiffs with a different type of pool than they had agreed to purchase.

We first consider the issue of liability. The issues submitted to the jury were contained in the first three counts of the five-count complaint. The first count alleges breach of contract and the second count alleges negligence in the performance of the contract. The specifications of negligence contained in both counts are essentially the same. The defendants concede that the controlling issue is whether the defendants used reasonable care and reasonable skill in performing their obligations under the contract. The third count alleges fraudulent misrepresentations to induce the plaintiffs to enter into the contract. The jury returned a general verdict and answered interrogatories indicating that the verdict was found in favor of the plaintiffs on each count. Where a complaint is divided into separate counts and a general verdict is returned, it will be presumed, if the charge and all rulings are correct on any count, that damages were assessed as to that count and the verdict will be sustained. *Sheeler* v. *Waterbury,* 138 Conn. 111, 114, 82 A.2d 359; see *Meglio* v. *Comeau,* 137 Conn. 551, 553, 79 A.2d 187. It is not necessary for us to determine whether the facts bring this case within the third count alleging fraudulent misrepresentations, since the general verdict as to liability can be supported under the first count and second count of the complaint. *Mercier* v. *Naugatuck Fuel Co.,* 139 Conn. 521, 525, 95 A.2d 263.

The defendants have assigned as error the court's refusal to direct a verdict in their favor. The correctness of the court's ruling is tested by the evi-

dence printed in the appendices to the briefs. *Fleming* v. *Becker*, 162 Conn. 563, 565, 295 A.2d 524. There was evidence from which the jury could reasonably have found that there was no water in the pool at the time of backfilling and that the pool was set too low for the area. If the evidence presented is in conflict and more than one conclusion is reasonably open to the jury, particularly when it consists of oral testimony, and if the jury may reasonably draw different inferences from the evidence, or if the jury could be called to pass upon the credibility of witnesses or their testimony, a verdict should not be directed by the court. *Loukides* v. *United Illuminating Co.*, 160 Conn. 66, 70, 273 A.2d 719; *Terminal Taxi Co.* v. *Flynn*, 156 Conn. 313, 317, 240 A.2d 881. On all the evidence and the reasonable inferences to be drawn therefrom, the plaintiffs' claims of negligence and proximate cause raised questions of fact which should properly be left to the determination of the jury. *Pinto* v. *Spigner*, 163 Conn. 191, 198, 302 A.2d 266. The court was not in error in refusing to direct a verdict.

A party may be liable in negligence for the breach of a duty which arises out of a contractual relationship. *Sasso* v. *Ayotte*, 155 Conn. 525, 529, 235 A.2d 636. Even though there may not be a breach of contract, liability may arise because of injury resulting from negligence occurring in the course of performance of the contract. *Dean* v. *Hershowitz*, 119 Conn. 398, 409, 410, 177 A. 262; 65 C.J.S., Negligence, § 4 (6). When the defendants undertook to install the pool, they were under a duty to exercise that degree of care which a skilled pool installer of ordinary prudence would have exercised under the same or similar conditions. See *Goodrich Oil Burner Mfg. Co.* v. *Cooke*, 126 Conn. 551, 553, 12

A.2d 833; *Ferrie* v. *Sperry,* 85 Conn. 337, 343, 82 A. 577; see *Bertozzi* v. *McCarthy,* 164 Conn. 463, 471, 323 A.2d 553. The test to be applied was whether an experienced installer of swimming pools under the circumstances of this case, knowing what was known or should have been known concerning the water conditions, particularly with reference to the high water table and drainage conditions, would anticipate the harm, of the general nature of that suffered in this case, that was likely to result. The defendant Cipriano was familiar with the instruction in the installation manual that backfilling must be done as the water was entering the pool. He agreed that the requirement was a sound one, and, if not followed, the pool would be distorted. The plaintiff Adrienne A. Johnson testified that there was no water in the pool at the time of backfilling and that the defendants made no percolation tests prior to excavation. Although these claims were denied by the defendant Cipriano, it is apparent that the jury chose to believe the plaintiffs, and that is within their province. We cannot retry the facts or pass upon the credibility of the witnesses. *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 561, 316 A.2d 394, and cases cited. In addition the plaintiffs' expert testified that the pool was set too low for the area and proper elevations should have been set up to avoid the flow of water over the soil onto the pool. The defendant Cipriano admitted he had a duty to follow the Imperial pool instruction manual "to a T." From the evidence and reasonable inferences to be drawn therefrom, the jury could reasonably have concluded that the defendants had failed to exercise that degree of skill which experienced pool installers, as the defendants professed to be, of ordinary prudence

would have exercised under the circumstances, with the result that the buckling and distortion, which was foreseeable, did, in fact, occur. *Sasso* v. *Ayotte,* supra, 530.

The necessary element in the plaintiffs' case was to prove that the negligence of the defendants was a substantial factor in causing their damages. *Ferndale Dairy, Inc.* v. *Geiger,* 167. Conn. 533, 538, 356 A.2d 91; *Mahoney* v. *Beatman,* 110 Conn. 184, 195, 147 A. 762. The jury reasonably could have concluded that the failure of the defendants to let water in the pool during the backfilling operation resulted in a weakened condition of the side panels so that they were unable to withstand the additional pressure of the water in the ground around the pool area. Furthermore, they could have found that, due to the negligent placement and construction of the pool, the only possible way to remedy the continual rising of rocks up against the liner bottom was to lay a reinforced concrete floor. The jury's finding that the negligence of the defendants was the proximate cause of the loss must stand unless a causal relation between that negligence and the plaintiffs' injury cannot reasonably be found. *Vastola* v. *Connecticut Protective System, Inc.,* 133 Conn. 18, 20, 47 A.2d 844; *Mahoney* v. *Beatman,* supra, 188. This is a question of fact for the jury to determine, after proper instruction by the court. The defendants assigned as error the court's charge to the jury; since the defendants did not brief any error in the court's charge that assignment of error is presumed to be abandoned. *Kuser* v. *Orkis,* 169 Conn. 66, 76, 362 A.2d 943; *Mercier* v. *Naugatuck Fuel Co.,* 139 Conn. 521, 528, 95 A.2d 263. There was no error in the court's refusal to set aside the verdict as to liability.

The defendants have assigned error in the refusal of the court to set aside the verdict awarding damages to the plaintiffs in the amount of $9100 as excessive. "The amount of the award is a matter within the province of the trier of the facts. *Slabinski* v. *Dix,* 138 Conn. 625, 629, 88 A.2d 115; *Gondek* v. *Pliska,* 135 Conn. 610, 617, 67 A.2d 552 . . . . Then too, denial by the trial court of a motion to set aside a verdict claimed to be excessive is entitled to weighty consideration. *Adams* v. *Mohican Hotel,* 124 Conn. 400, 403, 200 A. 336; *Ganter* v. *MacKay,* 120 Conn. 691, 692, 180 A. 310 . . . . It is with these principles in mind that this court must examine the defendant's claim that the amount of the verdict is exorbitant and unjust in the light of all the evidence. Such a claim raises a question of law. The issue here is not whether this court would have awarded more or less." *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589.

Under the circumstances of this case, the plaintiffs are entitled to recover all damages proximately caused by the defendants' negligent performance of the contract whether or not the results were reasonably to be anticipated. *Mourison* v. *Hansen,* 128 Conn. 62, 66, 20 A.2d 84; *Mahoney* v. *Beatman,* supra. The law of torts and of contracts differs in this respect. 11 Williston, Contracts (3d Ed.) § 1344. The measure of damages in the present case is the reasonable cost of repairs necessary to restore the swimming pool to its original intended condition and use under the contract. See Restatement, Contracts § 346.

Examination of the record discloses evidence concerning the following items of damage submitted for the jury's consideration and for which there was sufficient evidence printed in the appendix to

support an award of damages: Charles I. Eisenhauer, the plaintiffs' expert witness, estimated that the cost of future additional pool repairs and replacements to remedy the pool condition would amount to $5200. Repairs made prior to trial amounted to $631.58. The plaintiffs claim that they and their son performed 298 hours of work removing dirt from the area for which they claimed payment at the rate of $4.50 per hour, a total of $1341. The size of the verdict indicates that the jury awarded full reimbursement for the above items of compensatory damages in the sum total of $7172.58. Damages "may exceed the reasonable market value of the . . . [property]." *Anderson* v. *Gengras Motors, Inc.*, 141 Conn. 688, 692, 109 A.2d 502.

In addition, the plaintiffs claimed damages for loss of use of the pool. It is apparent that the remaining sum of $1927 could have been awarded by the jury only as consequential damages for loss of use or enjoyment. Damages should be established with reasonable certainty and not speculatively and problematically. 25 C.J.S., Damages, § 41. However, such damages for loss of use or enjoyment of property ordinarily are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier. *Krulikowski* v. *Polycast Corporation*, 153 Conn. 661, 670, 220 A.2d 444; *Nailor* v. *Blakeslee & Sons, Inc.*, 117 Conn. 241, 246, 167 A. 548; but see *Stern & Co.* v. *International Harvester Co.*, 146 Conn. 42, 45, 147 A.2d 490, and cases cited. The defendants are liable for such damages as the plaintiffs sustained as a result of their loss of use of the pool and an essential element of the plaintiffs' burden of proof is the value of the use of the pool. 22 Am. Jur. 2d, Damages, § 155; see *Anderson* v. *Gengras Motors, Inc.*, supra. The

plaintiffs will not be denied a substantial recovery if they have produced the best evidence available and it is sufficient to afford a reasonable basis for estimating their loss. 22 Am. Jur. 2d, Damages, § 251. To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which affords a reasonable basis for measuring the plaintiffs' loss. *Hedderman* v. *Robert Hall of Waterbury, Inc.*, 145 Conn. 410, 413, 414, 144 A.2d 60. The plaintiffs had the burden of proving the nature and extent of the loss of use.[1]

While the record contains evidence that the pool was not usable at certain times owing to temporary repairs, there was no evidence printed in the appendix to the plaintiffs' brief which would permit the jury (1) to approximate the number of days that the pool was unusable, (2) to approximate the extent of the actual or intended use made of the pool by the plaintiffs and their children when the pool was usable and (3) to establish a daily value use of the pool. Since there was insufficient support for $1927 of the amount the jury awarded the plaintiffs, that amount is excessive.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs to recover $7123, with interest from the date of the original verdict.

In this opinion the other judges concurred.

---

[1] The only evidence pertaining to the plaintiffs' claimed loss of use of the pool printed in the appendix is the testimony of the plaintiff Robert E. Johnson, who stated as follows: "My family and I began to use the pool in the middle of June, 1971, a few days after the children got out of school. After two or three days of use, the filter pump motor malfunctioned. During the first three weeks of using the pool, I observed rocks pushing up the bottom of the pool. In September I was told to drain the pool. The pool was refilled with water at the end of September, 1971. At the time of trial, the pool was unusable."