[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs brought this action against the defendants to recover a security deposit in the amount of $2200 and reimbursement of $118.14 for fuel oil. They seek double damages and interest pursuant to Conn. Gen. Stat. 47a-21 (d). CT Page 1033
In a counterclaim the defendants seek damages for losses they claim were caused by the plaintiffs when the latter leased residential property from the defendants. The first count of the defendants' counterclaim alleges increased wear and tear at the premises due to the "business traffic" related to the plaintiffs' work as counselors; it also alleges loss of rental value for a commercial lease. This count sounds in breach of contract and intentional tort. The second count alleges intentional or negligent injury to trees and shrubbery. The third count alleges damages due to intentional acts or negligent repair and maintenance, specifically a large oil stain on the driveway, a broken electric outlet, ripped kitchen wallpaper, scratched hardwood floors, water damages to a deck and stairway resulting from water spillover from clogged gutters; lawn damage; missing ceiling hooks; a lingering odor from the plaintiffs' cats; and replacement of a faucet, mailbox and kitchen sink strainer with inferior materials.
Mr. Ghosh orally sought two days extra rent for the first two days of the plaintiffs' occupancy in 1989; however, there was no evidence that he had demanded this when the plaintiffs moved in and that the plaintiffs had agreed to pay two extra days rent.
At trial the defendants appeared without counsel and Paritosh Ghosh handled cross-examination and the presentation of evidence.
The court finds the following facts. The parties entered into a written lease agreement dated October 1, 1989 for a term of one year. With the consent of the defendants, the plaintiffs moved in on or about September 28, 1989. They vacated the premises on September 28, 1990. They requested the return of their security deposit but the defendants refused to return the funds claiming damages to the property. The defendants did not pay to have any of the items they claimed damaged repaired. They sold the property after the plaintiffs vacated.
The court finds that the damage described to such items as the broken outlet, the missing ceiling hooks, the scratched hardwood floors and the replacement of the faucet, sink strainer and mailbox are attributable to normal wear and tear. In fact no evidence was produced relating to the expense or quality of the original faucet, sink strainer and mailbox or to the expense or quality of their replacements; consequently, the court would not have been able to find for the defendants on that issue in any event.
It is clear that the defendants took pride in their lawn and shrubbery. It is equally clear that their idea of what constituted care and maintenance differed from that of the plaintiffs'. The language of the lease did not specify the nature of the care or maintenance the defendants expected. In fact, since the defendants' CT Page 1034 son mowed the lawn for the plaintiffs, it would be reasonable to expect that, had the lawn required some added degree of care that fact would have been brought to the plaintiffs' attention during their occupancy.
The plaintiffs substantially cut back the shrubbery in front of the house. Both sides produced expert testimony from professional landscapers who agreed that the shrubs had been damaged by being cut across the top. One expert described "damage" as meaning "not able to produce growth again." Both testified that they had seen the shrubs since and they were alive in 1991 with growth at the sides, if not the top. However, despite introducing estimates and testimony regarding the replacement of the shrubs, the defendants did not replace the shrubs before selling the property and therefore had no out of pocket damages.
The defendants also claimed they suffered damage because the plaintiffs conducted a counseling business at the residence. The court does not find that the plaintiffs fraudulently represented or misrepresented the nature of their occupancy as the defendants contend in the second count of their counterclaim. The court finds that the plaintiffs advised the defendants that they counseled at home. The defendants introduced no evidence as to what damages they ascribed to "increased wear and tear" nor as to the rent they lost by not charging a commercial rate. Therefore, the court was unable to determine what their loss of rental income would have been.
The defendants called Otto Olsen as a witness to describe the condition of the house shortly before the Wyatts took possession. Mr. Ghosh also asked his opinion as to an asking price for the sale of the house. Mr. Olsen testified that he did not notice torn or loose hanging wallpaper in the kitchen; nor did he notice an oil stain in the driveway, or water damage to the deck. Mr. Olsen testified that he owned properties and sold them but he was neither a licensed broker or real estate appraiser. He told Mr. Ghosh that he could ask $250,000 for the house.
At one time the defendants had listed the property for sale for $270,000. Mr. Ghosh testified that they had purchased the house in 1983 for $87,000 and that they had made improvements in the amount of $100,000; however, they presented no evidence of the nature and cost of these improvements. After the plaintiffs vacated the house and the Ghoshes decided that damage had been done they were very distressed and Mrs. Ghosh in particular wanted the property sold as soon as possible. They listed the house for $204,000 and in May, 1991 they sold the property in "as is" condition for $184,000.
Mr. Ghosh claims that the difference between the asking price CT Page 1035 and the actual selling price was due to the damage caused by the plaintiffs. However, he did not call his realtor to testify to any price negotiations that might have occurred relative to the condition of the lawn, the shrubs, the driveway, and the kitchen walls, or to the lingering cat odor. Instead the court was left with Mr. Ghosh's insistence that the value of the house decreased to the economic detriment of himself and his wife.
In Conaway v. Prestia, 191 Conn. 484, 493-494, the Connecticut Supreme Court said "(I)t is axiomatic that a claimant seeking damages bears the burden of proving, with reasonable certainty, those damages sustained as a result of his injury."
 Although damages often are "not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier"; Johnson v. Flammia, (169 Conn. 491, 500); this situation does not invalidate a damage award as long as "the evidence afforded a basis for a reasonable estimate by the (trier) of that amount." Paiva v. Vanech Heights Construction Co., 159 Conn. 512
The evidence does not afford a basis for a reasonable estimate of damages, in this case a depreciation of the value of the house due specifically to the items allegedly damaged. The court can take judicial notice of the fact that real estate values have been declining. The Court heard no testimony nor saw no evidence which indicated how much of a difference if any, between asking price and sale price was caused by the alleged "damage" to the shrubs, the floors, the walls, the deck and the driveway and how much to present market conditions for real property. Perhaps a witness such as the defendants' real estate broker could have shed light on this issue. The defendants' submitted estimates for repairing and replacing the damaged items but in fact never repaired or replaced anything. The defendants failed to meet their burden of proving the amount of the damage which they presumably charged against the security deposit.
The defendants also claimed attorney's fees, but failed to submit an affidavit from the attorney who drew the complaint and originally represented them in this matter.
The plaintiffs submitted a delivery ticket from Hoffman Fuel showing that 226.3 gallons of fuel oil was delivered on September 24, 1989. (Exhibit H 1-3). Although the ticket was issued to Mr. Ghosh, the oil was paid for by the plaintiffs. Since the tank capacity was 275 gallons, they received the benefit of 48.7 gallons already in the tank. When they vacated on September 28, 1990, they left 135 gallons. Therefore they seek reimbursement for the 86.3 gallons in excess of the amount of fuel they received in 1989. At the market price of 1.369 per gallon, they claim $118.14. CT Page 1036
For the foregoing reasons, the court finds that judgment may enter in favor of the plaintiffs on their complaint. Absent proof by a preponderance of the evidence as to actual monetary loss, the defendants cannot prevail on their counterclaim. The plaintiffs are awarded the sum of $2200 plus interest due on the security deposit in the amount of $267.20; $2200 as double damages, and $118.14 for fuel oil.
LEHENY, JUDGE