[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for payment on a commercial painting contract, together with a counterclaim for damage assertedly caused to the premises by the plaintiffs actions, has been tried to the court. For the reasons briefly explained below, the Court finds that judgment must enter for the defendant on both the plaintiffs complaint and the counterclaim.
The procedural posture of the case must briefly be described. The plaintiff, Dean Spataj ("Spataj") commenced this action by service of process on April 21, 1994. There were originally two defendants, but the action has been withdrawn as to one of them. The remaining defendant is Henry Knox Sherrill Cooperative, Inc. (the "Co-Op"), an entity which owns a cluster of residential CT Page 9906 buildings in New Haven collectively known as the Friendship Housing Co-Op.
Spataj's complaint against the Co-Op consists of a single count, somewhat confusingly combining theories of breach of contract and unjust enrichment. He specifically alleges (and the Co-Op admits) that on about May 1, 1992, he and the Co-Op entered into an oral contract in which the Co-Op agreed to pay him the sum of $27,000 for professional painting services. He also alleges (and the Co-Op also admits) that the Co-Op paid him two installments on this contract for the period ending May 22, 1992, but has failed to pay the final payment. Spataj further alleges that he "has performed and completed said painting services in a workmanlike manner as agreed," that the Co-Op owes him money "for services rendered," and that the Co-Op has been unjustly enriched. The Co-Op denies these latter allegations.
On June 8, 1994, the Co-Op filed a counterclaim. The counterclaim alleges that Spataj's "poor and improper workmanship, material selection, and surface preparation have caused severe damage to the premises," and that the Co-Op "is entitled to reparation for the damage caused by Plaintiff's actions." Spataj denies these allegations.
The case was tried to the Court From June 30 to July 2, 1999. Posttrial briefs were submitted on July 19, 1999. The Court's findings of fact and conclusions of law are as follows.
Spataj is a commercial painter. The Co-Op owns a complex of seven residential buildings in new Haven. On January 29, 1992, Spataj sent the Co-Op a written proposal to paint the seven buildings. The proposal expressly stated that the work was to be "completed in a substantial workmanlike manner for the sum of $27,000." The proposal further stated that payment was to be made either "1/3 1/3 1/3 or 1/2 1/2." It is undisputed that the Co-Op orally accepted this proposal on about May 1, 1992 and agreed to pay the sum in question in three installments of $9,000 each. It is also undisputed that the first two payments were duly made on May 4, 1992, and May 22, 1992, and that the third and final payment has never been made.
Spataj started work on May 4, 1992 (the date of the first payment) and finished on or about June 26, 1992. The Co-Op's board of directors expressed dissatisfaction with the nature and quality of his work from the beginning. Many reasons for this CT Page 9907 dissatisfaction are firmly grounded in the evidence. Spataj had represented to the board, in attempting to gain the contract, that he had a crew of five painters. In fact, the "crew" was Spataj himself, occasionally assisted by one or two drug addicts hired on the spot from the local area. (Spataj denied this in court, but in this, as in many other areas, he was not a credible witness.) Halfway through the project, Spataj got into a payment dispute with his paint supplier and had to change suppliers, brands, and, inevitably, shades of paint. This resulted in the complex being painted in two different shades, rather than in a single color.
Most seriously of all, however, Spataj did not paint the complex in the promised "workmanlike manner." The most serious defect in his workmanship was his failure to power wash the walls prior to application of the paint. This was a particularly serious omission because he had represented to the board, in attempting to get the contract, that he would clean the walls prior to painting. Spataj further admitted in court that power washing was required by the standard of care applicable to commercial painting. His testimony that the board had approved the omission of power washing to keep the cost down was not credible and was contradicted by much credible evidence to the contrary. The lack of power washing meant that there would be inevitable problems with the appearance and adherence of the paint. By Spataj's own testimony, he failed to comply with the applicable standard of care. Spataj also failed to caulk the walls in a proper manner prior to painting. In addition, he failed to pull back or cover the shrubbery by the walls, resulting in an unattractive "halo effect" behind the shrubbery.
The Co-Op at no time approved the work in question. There was credible evidence that the second payment was made on May 22 only because the Co-Op was concerned that Spataj's first (abandoned) paint supplier would place a lien on its property.
For these reasons, the Court concludes that Spataj has not carried his burden of proof that his work was performed in the promised "workmanlike manner" alleged in his complaint. He is not entitled to recover on his contractual claim. In addition, the evidence is insufficient for the Court to find that the Co-Op has been unjustly enriched. Judgment must enter for the defendant on the complaint.
The Co-Op's counterclaim must now be addressed. As mentioned, CT Page 9908 the Co-Op alleges in its counterclaim that Spataj's "poor and improper workmanship, material selection, and surface preparation have caused severe damage to the premises." Although the Court finds that the Co-op has carried its burden of proof on this allegation, some explanation is required.
There is, in the first place, no credible evidence that Spataj's poor workmanship has caused physical damage to the premises. Poor as his workmanship was, the paint that Spataj applied appears to have been sufficient to protect the physical structures in question from being measurably harmed by the elements. In the second place, the Co-Op presented no evidence that the property in question has diminished in value because of Spataj's poor workmanship.
The Co-Op instead focuses on the cost of repairs. It presented credible expert evidence that this cost will be substantial. This substantial cost incorporates a number of factors. Not only must the premises be repainted as a result of Spataj's failure to do a workmanlike job, but, before repainting can even begin, the paint that Spataj inexpertly applied must first be removed. This is necessary for two reasons. First, as already described, Spataj failed to adequately clean the surface prior to application of his paint, and, consequently, simply painting over the coat of paint that he applied is not appropriate. The problems with the lack of adhesion would simply multiply. Second, Spataj used latex paint, and it is inappropriate to paint over latex. After Spataj's paint has been removed, the surface must now be power washed. This will involve a considerable expense not adequately reflected in Spataj's $27,000 bid. Once the surface is adequately prepared, a coat of paint must then be applied. The Co-Op presented credible evidence that the initial removal of Spataj's paint would cost a minimum of $15,000, and the remaining steps would cost a minimum of $45,000. (Both figures reflect 1992 prices. The Co-op's expert described a range of possible costs of repair in his testimony. The finding of the Court about to be stated represents the minimum figure in that range.) The Court finds that the total cost of repair is $60,000.
Our Supreme Court has recently explained the proper amount of damages for injury to real property:
In determining the proper measure of damages for injury to land, the legal effort is to compensate the landowner for the damage CT Page 9909 done. . . . This is essentially true whether the injury is redressed under a theory of tort or breach of contract . . . The basic measure of damages for injury to real property is the resultant diminution in its value. . . . There is, however, a well established exception to this formula; such diminution in value may be determined by the cost of repairing the damage, provided, of course, that the cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was before it was damaged.
Willow Springs Condominium Association, Inc. v. Seventh BRTDevelopment Corp., 245 Conn. 1, 59, 717 A.2d 77 (1998). (Internal quotation marks and citations omitted.)
The costs of repairs is plainly an appropriate yardstick with which to measure the damages to be awarded the Co-Op in this case, particularly since the costs in question do not exceed the former value of the property and since there is no evidence that the contemplated repairs will enhance the value of the property over what it was before it was damaged.
The principal remaining question is whether the cost of repairs to be awarded is simply the cost of removing Spataj's paint, which will restore the property to the condition it was in prior to the time Spataj began his work, or whether the award should additionally include the cost of power washing the walls and subsequently providing a coat of paint, which will give the Co-Op the benefit of the bargain it made with Spataj. Johnsonv. Flammia, 169 Conn. 491, 363 A.2d 1048 (1975), provides helpful guidance on this point. The defendants inJohnson negligently performed a contract to install a swimming pool. As a result of their negligence, a substantial additional expense was necessary to place the pool in proper condition. The Supreme Court held that the plaintiffs were "entitled to recover all damages proximately caused by the defendants' negligent performance of the contract whether or not the results were reasonably to be anticipated." Id. at 499. The measure of damages in Johnson was "the reasonable cost of repairs necessary to restore the swimming pool to its original intended condition and use under the contract."Id.
It is clear from Johnson that the measure of damages in the present case is the reasonable cost of repairs necessary to restore the buildings in question to their original CT Page 9910intended condition under the contract. As mentioned, credible evidence submitted at trial establishes that this sum is $60,000.
One final issue remains to be addressed. It will be recalled that the Co-Op never made the final payment of $9,000 required under its contract with Spataj. However justifiable that withholding may have been given Spataj's poor workmanship, the amount withheld must be subtracted from the cost of repairs in calculating damages. This will avoid giving the Co-Op a windfall in awarding it the benefit of its bargain. See
RESTATEMENT (SECOND) OF CONTRACTS § 347 cmt. d illus. 6 (1981). Although the principles of torts and contracts differ in important respects in the calculation of damages, Johnson v.Flammia, supra, indicates that the Restatement of Contracts can be usefully referred to in awarding tort damages that will restore parties to contracts to the economic situation originally contemplated by those parties. 169 Conn. at 499. The appropriate award on the counterclaim is, consequently, $60,000 less $9,000, or $51,000.
Judgment shall enter for the defendant on the plaintiffs complaint. Judgment shall enter for the defendant against the plaintiff on the counterclaim in the amount of $51,000.
Jon C. Blue Judge of the Superior Court