[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a one count complaint in which the Plaintiff, Michael A. Young, d/b/a M.A. Young Trucking seeks damages from the Defendant, Edgardo Arroyo, resulting from a collision in which the defendant struck the rear of Plaintiff's 1974 Pennco trailer. The issue of liability has been stipulated to. The trial proceeded as a hearing in damages.
The Plaintiff is seeking property damage to the trailer in the amount of the replacement cost $14,000; lost business income from October 7, 1998 through October 30, 1998, in the amount of $12,345; trailer rental expenses of $24,000 for the period from October 30, 1998 through September 30, 1999; cleaning and inspection costs in the amount of $170.
The plaintiff relies on the following authorities to support his damage claims: A plaintiff is entitled to recover all damages proximately caused by a defendant's negligence. Johnson v. Flammia, 169 Conn. 491, 499
(1975). An additional measure of damage for personal property is the loss of use or enjoyment of the personal property. Johnson v. Flammia,169 Conn. 491, 500 (1975); Anderson v. Gengras Motors, Inc., 141 Conn. 608,692-693 (1954). ". . . an owner of damaged but repairable item may recover not only the difference between its market value immediately before and after the injury (or, in appropriate cases, the cost of repair) but also the value of the loss of its use during the time reasonably necessary to make the needed repairs. 22 Am Jur 2d, § 445, P. 527.
The facts are as follows. The collision took place on I-84 on October 6, 1998 with the Plaintiff sustaining damage to his trailer. On October 8, 1998, the Defendant's representative traveled to the Plaintiff's residence in Ware, Massachusetts, to inspect the damage to the trailer. Plaintiff was instructed to bring the trailer to a repair shop of his own choosing. Fleetpride, Inc. was chosen as the repair shop. Defendant's representative and the repair shop agreed on a price to repair the trailer. A check was given to the Plaintiff in the amount of $6,665.23 on CT Page 12486 November 16, 1998.
From October 8, 1998, when the Defendant's representative gave the OK to go ahead with the repairs until November 25, 1998, Fleetpride, Inc. could not proceed with any repairs because the trailer had not been cleaned out. The Plaintiff was unable to say why it took so long to have the cleaning done.
During this time Fleetpride tried to locate the manufacturer of the trailer for the part which needed to be replaced. They learned the manufacturer was no longer in business and that the part needed was not available. At this point Fleetpride attempted to have the part constructed. However, when this part was received in the middle of December the part did not fit. At this point Fleetpride told the plaintiff that no more money should be expended to repair the trailer because of its age. It was manufactured in 1974. It was a specialty trailer designed to transport waste liquids. The plaintiff bought it in 1996 for $12,000.
From October 8, 1998 to October 30, 1998, the plaintiff claims lost income because his fleet of four tractors with four trailers was down one tractor and one trailer therefore rendering the plaintiff unable to haul for the Paradise Energy. Exhibit 12 prepared by the plaintiff for the trial, lists the dates of October 7, 1998 thru October 30, 1998; states on each date where the waste material was loaded at; each date that delivery was made to Paradise Oil; the number of gallons included in each haul and the revenue for each haul. No invoices were offered into evidence. Yet the Plaintiff testified that he had sent copies of invoices to the Defendant as part of discovery. Neither is there in evidence a previous pattern of pick ups and deliveries from which a determination could be made as to the claimed lost income. The letter from Paradise Energy dated May 20, 2002, references no records used by them to secure the information provided for the period from 10/7/89 thru 10/30/89.
The court finds this lost income claim has not been proven by a preponderance of the evidence and disallows the claim.
The rental agreement for the trailer entered into on November 1, 1998, provided for a rental charge of $500 per week and for a return of the trailer by December 27, 1998.
The Plaintiff knew by mid-December that his trailer could not be repaired. He did not notify the defendant or the defendant's representative Allstate to this affect. Instead he began looking around on his own and in May of 1999 enlisted the help of JM Funding. It took CT Page 12487 JM Funding three months to find an 8000 gallon waste oil trailer with an internal hose. This court finds the continued rental of a trailer for nine months after plaintiffs trailer was found to be unrepairable to be unreasonable. Accordingly, the court allows $12,000 rental costs covering a six month period.
We now come to a consideration of the $14,000 claimed by the Plaintiff as the cost of replacing his trailer with another one. The one he bought was made in 1984. The one involved in the accident was made in 1974. The Plaintiff bought his 1974 trailer in 1996 and paid $12,000 for it. He bought the 1984 replacement trailer in September of 1999 and paid $14,000 for it.
Because the Plaintiff did not notify the defendant or the defendant's representative, Allstate, that the trailer could not be repaired, the Plaintiff does not have a total loss figure on the trailer. It is not known what the total loss figure is as to the 1974 trailer.
Allstate gave the Plaintiff $6,665.23 to repair the trailer. The court cannot speculate as to a total loss figure. The replacement trailer is ten years younger (1984) than the old one (1974). The Plaintiff paid $2,000 more for the 1984 one. It holds 1000 gallons more than the 1974 one.
No competent evidence was provided as to what the value of the damage to the trailer was. "The true rule is that the measure of damages is the difference between the fair market value of the car before the collision and its fair market value afterwards. . . ." Stults v. Palmer,141 Conn. 709, 712 (1954). There was no testimony that the trailer had no value after the accident. In fact it was considered repairable, the only problem being that the company that manufactured the 1974 trailer was no longer in business and there were no available manufactured parts with which to replace the damaged part in the trailer. Other than to testify that Fleetpride told him it was not worth putting any more money into the trailer, the Plaintiff did not testify as to what the additional cost would have been, whether the constructed part could be modified to fit better. Nor did the Plaintiff advise the defendant or its representative, Allstate, of the problems encountered. After several months of more lost time the Plaintiff decided he should get a replacement trailer and did so without contacting the defendant or the defendant's representative, Allstate; and without giving the defendant or his representative the opportunity to value the trailer after the accident.
The Plaintiff now seeks to be compensated in full for the cost of the CT Page 12488 replacement trailer. To do this would be to put the Plaintiff in a better position than he was before the accident. The Plaintiff made a unilateral decision to replace the trailer without involving the defendant or his representative in any way. The amount the Plaintiff received to repair the trailer is the amount the court allows toward the cost of the replacement trailer, that is $6,665.23.
 Summary
For the reasons as stated, this court disallows the loss of income claim as not
proven; the cost of the trailer rental is allowed in the amount of $12,000; the cost of cleaning and inspection is allowed in the amount of $170; the amount allowed for the replacement trailer purchased is $6,665.23. Accordingly, judgment may enter for the Plaintiff in the amount of $18,835.23.
Hnnessey, J. CT Page 12489