CENTIMARK CORPORATION *v.* VILLAGE MANOR
ASSOCIATES LIMITED PARTNERSHIP
(AC 29012)

Gruendel, Harper and Beach, Js.

510

Argued September 26, 2008—officially released April 7, 2009

*Martin A. Clayman*, with whom, on the brief, was *Michael Hafkin*, for the appellant-appellee (plaintiff).

*Dominic Fulco III*, for the appellee-appellant (defendant).

*Harold R. Cummings*, with whom was *Doreen Amata*, for the appellee (third party defendant M. Dzen Roofing Company, Inc.).

*Opinion*

BEACH, J. The plaintiff, Centimark Corporation (Centimark), commenced this action against the defendant, Village Manor Associates, Limited Partnership (Village Manor), seeking, inter alia, to foreclose a mechanic's lien that it had placed on Village Manor's real property after Village Manor had failed to pay Centimark for services rendered in installing a roof. Village Manor, alleging problems with the roof, filed a counterclaim against Centimark. Centimark, as a counterclaim defendant, impleaded M. Dzen Roofing Company, Inc. (Dzen), the roofing company that installed a portion of the roof pursuant to a subcontract agreement between it and Centimark. The trial court found in favor of Village Manor on all counts of its counterclaim and in favor of Centimark on its third party complaint. Centimark appealed from the judgment of the trial court, and Village Manor cross appealed. On appeal, Centimark claims that the court improperly (1) found in favor of Village Manor on Village Manor's claims of negligent misrepresentation, fraudulent misrepresentation, breach of contract and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (2) assessed damages on certain counts of Village Manor's counterclaim. With respect to its third party complaint against Dzen, Centimark

claims that the court improperly determined its indemnification damages. On cross appeal, Village Manor claims that the court improperly concluded that it cannot recover its expert witness fees pursuant to the CUTPA count. With respect to Centimark's appeal, we affirm the award of damages on Village Manor's counterclaim. With respect to Centimark's claims regarding its third party complaint, we reverse the judgment of the court with respect to the amount of damages and remand the case for a determination as to the amount of attorney's fees to be awarded. We disagree with Village Manor's claim on its cross appeal.

The following facts, as found by the court, and procedural history are relevant to our resolution of these appeals. Village Manor owns a facility in Plainfield, which it leases to Village Manor Health Care, Inc. (Village Manor Health Care). In 2001, Carter Rodowicz, vice president of Village Manor Health Care, who was acting as a representative of Village Manor, asked Barry Slotnick, administrator of Village Manor Health Care, to compile bids from roofing companies to construct a new roof on the nursing facility. In response to the request for bids, Michael Rzempoluch, a project manager for Centimark, prepared a proposal that included providing materials, installing a second layer of shingles on the pitched portions of the roof and installing a second layer of materials on the flat portion of the roof. Centimark does not itself install pitched roofs, and, prior to submitting his proposal to Village Manor, Rzempoluch contacted Dzen to obtain a bid for doing the work on the pitched portions of the roof. In July, 2002, Rodowicz, on behalf of Village Manor, met with Jeff Westbrook, local project manager for Centimark, to discuss Rzempoluch's proposal.[1] Westbrook brought

---

[1] Rzempoluch had left the local office of Centimark, and Westbrook assumed his position.

Dean Pinto, residential manager for Dzen, to the meeting. During the meeting, Rodowicz and Westbrook discussed the fact that Dzen would be installing the shingled portion of the roof. Dzen, a GAF Master Elite contractor, is considered to be in the top 2 percent of shingle roofers in the country. Partly because of Dzen's elite status, Rodowicz decided to enter into an agreement with Centimark. Pursuant to the agreement between Centimark and Village Manor, Centimark was to perform the entire roofing job, and it was recognized that Dzen would provide the materials for and perform the installation of the shingled portion of the roof. The contract provided, inter alia: "All items listed in the scope of work will be completed by [Centimark] and [Dzen]." The agreed on price was $98,999.76, rounded to $99,000.

Centimark then entered into a subcontract agreement with Dzen for $38,992. Dzen contracted the labor for the shingled portion of the roof to Tom Thompson, a local roofing contractor doing business as BHR Construction, LLC (BHR). BHR hired a small crew of independent contractors with limited experience to install the shingled portion of the roof. Neither Thompson nor any of the independent contractors on his crew were GAF Master Elite contractors. Dzen supplied materials, including nails, roof cement and shingles to BHR. Dzen also supplied BHR with T-shirts and signs, both bearing Dzen's name, so customers would think Dzen workers were installing the roof. Centimark and BHR began work on the roof in August, 2002, and completed the work by September 12, 2002.

In the beginning of September, 2002, Rodowicz returned from out of state and inspected the roof for the first time since work had begun. Rodowicz was not satisfied with the workmanship. On September 4, 2002, in a meeting with representatives of Centimark, he expressed concern that, inter alia, most of the HVAC

units were not flashed with metal flashing and that there were defects in the installation of the shingled roof. In a letter dated September 11, 2002, Rodowicz expressed his additional concerns that, inter alia, Dzen had subcontracted the labor for the shingled portion of the roof to BHR. The problems were not resolved, and Village Manor never paid Centimark for the roof. Centimark, in November, 2002, filed a mechanic's lien on the land records of the town of Plainfield against Village Manor for the entire contract price.

Centimark filed a one count complaint seeking to foreclose on the mechanic's lien that it had placed on Village Manor's property. In its complaint, Centimark alleged that the agreement between it and Village Manor provided for payment to Centimark of $98,999.76 for services rendered but that Village Manor had not paid any of that amount to Centimark. Village Manor filed an amended answer, special defenses and a six count counterclaim. Village Manor asserted, inter alia, negligent misrepresentation as a special defense. In its counterclaim, Village Manor alleged breach of contract, negligence, breach of warranty, negligent misrepresentation, fraudulent misrepresentation and a violation of CUTPA.

In July, 2004, Centimark filed a motion to implead Dzen, which was granted by the court, *Potter, J.* Centimark thereafter filed an amended third party complaint in three counts against Dzen. In its third party complaint, Centimark sought indemnification from Dzen.

After a trial to the court, the court, *Martin, J.*, issued a memorandum of decision. It found against Centimark on the claim for foreclosure of its mechanic's lien because Village Manor's special defense of negligent misrepresentation defeated recovery. It found in favor of Village Manor on all counts of its counterclaim. The court found that Centimark breached its contract with

Village Manor by failing to obtain a building permit, failing to use Dzen itself to install the shingled portion of the roof and failing to install the shingled portion of the roof in accordance with GAF specifications, the building code and the agreement between the parties in that, inter alia, it failed to flash the roof properly. On the breach of contract count of Village Manor's counterclaim, the court awarded Village Manor $139,670 to replace the shingled portion of the roof in a proper manner and reduced that amount by $98,999.76, the contract price, which Village Manor had not paid. The net amount of damages awarded to Village Manor on its breach of contract count, therefore, was $40,670.24. With respect to the counts of Village Manor's counterclaim alleging negligence, breach of warranty, negligent misrepresentation and fraudulent misrepresentation, the court awarded Village Manor the same damages for these claims as it awarded on the breach of contract count. With respect to Village Manor's count alleging a violation of CUTPA, the court awarded $133,276.82 in attorney's fees but did not award Village Manor the cost of its expert witness fees. On Centimark's third party complaint in which it sought indemnification from Dzen, the court found in favor of Centimark and awarded it $38,992. This appeal and cross appeal followed. Additional facts will be set forth as necessary.

I

CENTIMARK'S CLAIMS AS TO LIABILITY ON VILLAGE MANOR'S COUNTERCLAIM

Centimark first claims that the court improperly found in favor of Village Manor on its claims alleging negligent misrepresentation, fraudulent misrepresentation, breach of contract and a violation of CUTPA. As explained more fully in part II A, the court awarded Village Manor one damages award for its claims of

breach of contract, negligence, breach of warranty, negligent misrepresentation and fraudulent misrepresentation. Therefore, as long as the court's finding of liability is proper with respect to one of those counts on which the damages award is based, then the damages award, if proper in itself, would stand. Centimark did not contest the court's finding of liability with respect to the negligence count.[2] As a consequence, even if we were to conclude that the court's decision as to one of the challenged counts was improper, Centimark could be afforded no practical relief because its liability would rest on the unchallenged finding of negligence. See *Housing Authority* v. *Davis*, 57 Conn. App. 731, 733, 750 A.2d 1148, cert. denied, 254 Conn. 901, 755 A.2d 218 (2000). Accordingly, we need not address Centimark's claims that the court's finding of liability with respect to the counts alleging breach of contract, negligent misrepresentation and fraudulent misrepresentation was improper. We need only address Centimark's claim regarding the court's finding of a violation of CUTPA, for which the court separately awarded damages. To address the CUTPA claim more fully, however, we will address the issues of negligent misrepresentation and fraudulent misrepresentation.

A

Negligent Misrepresentation

Centimark claims that the court improperly found in favor of Village Manor on its claim of negligent misrepresentation. We disagree.

---

[2] Centimark did not contest liability with respect to the negligence count, and we conclude in part II that the court properly used replacement cost when measuring damages under that count. We have not addressed, nor do we need to address, whether this is also the appropriate measure of damages for negligent misrepresentation, fraudulent misrepresentation and breach of warranty in the context of this case.

"Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami* v. *Patrons Mutual Ins. Co.*, 280 Conn. 619, 626, 910 A.2d 209 (2006). "Whether evidence supports a claim of . . . negligent misrepresentation is a question of fact. . . . As such we will review the findings of the court as to negligent misrepresentation and reverse [a] judgment as to [such] claim only if the findings are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Johnnycake Mountain Associates* v. *Ochs*, 104 Conn. App. 194, 201–202, 932 A.2d 472 (2007), cert. denied, 286 Conn. 906, 944 A.2d 978 (2008).

Village Manor alleged the following facts in its count alleging negligent misrepresentation. Pursuant to the agreement between Centimark and Village Manor, all work was to be undertaken by Centimark and Dzen. As an inducement to enter into the agreement, Centimark represented to Village Manor that Dzen, which was a GAF Master Elite contractor that was in the top 2 percent of all shingle installers in the country, would perform all of the work on the shingled portion of the roof. Village Manor relied on this representation and entered into the agreement with Centimark. Dzen, however, did not perform the work on the shingled portion of the roof.

The court found that Village Manor met its burden of proof on its claim for negligent misrepresentation. It found that representatives of Centimark represented to Village Manor on numerous occasions that Dzen, which was a GAF Master Elite contractor standing out as one of the top 2 percent of all shingle applicators in the country, would be performing all of the work on

the shingled portion of the roof. Specifically, it found that when Westbrook, the local project manager for Centimark, met with representatives of Village Manor to negotiate the agreement, Westbrook represented to Rodowicz that Dzen would be performing the work on the shingled portion of the roof. It also found that prior to the execution of the subcontract agreement between Centimark and Dzen, Rzempoluch, a project manager for Centimark, knew that Dzen would subcontract the work. Rzempoluch, however, did not inform any representative of Village Manor of this fact. The court further found that Village Manor relied on such representations and, accordingly, entered into the agreement with Centimark. That contract provided, inter alia, that "[a]ll items listed in the scope of work will be completed by [Centimark and Dzen]."

Dzen, however, subcontracted the labor for the shingled portion of the roof to Thompson, a local roof contactor doing business as BHR. Thereafter, BHR hired a small crew of independent contractors with limited experience to install the shingled roof. Neither Thompson nor any member of his crew were GAF Master Elite contractors.

The court concluded that Village Manor suffered damages as a result of Rzempoluch's and Westbrook's representations on behalf of Centimark and awarded Village Manor the same damages on its claim of negligent misrepresentation as it did for Village Manor's breach of contract count.

On appeal, Centimark takes issue with the court's findings regarding the reliance element of negligent misrepresentation. Centimark argues that the court improperly failed to follow *O'Donnell* v. *Rindfleisch*, 13 Conn. App. 194, 535 A.2d 824, cert. denied, 207 Conn. 805, 540 A.2d 373 (1988), which, it claims, compels a different result. In *O'Donnell*, the primary issue was

whether the plaintiff, who was a registered contractor, violated any of the provisions of the Home Improvement Act (act), General Statutes § 20-418 et seq., or CUTPA by hiring a subcontractor who was not registered as a home improvement contractor under the act to perform work on the defendants' home. *O'Donnell* v. *Rindfleisch*, supra, 204–205. In that case, we held that General Statutes § 20-420 (a) of the act, which requires that home improvement contractors be registered, did not apply to the plaintiff's subcontractors. *O'Donnell* v. *Rindfleisch*, supra, 204–205.

In *O'Donnell*, this court also upheld the trial court's conclusion that the plaintiff's representation in an advertisement that the plaintiff " 'sells it, installs it, and guarantees the labor and materials' " did not reasonably support a reliance by the defendants that he would personally do all of the work. Id., 197. The *O'Donnell* court also upheld the trial court's finding that there was no evidence that the defendants relied on any special skill of the plaintiff. Id., 198.

Centimark argues that under the principles of *O'Donnell*, there is no requirement that the individual members of the crew who installed the roof be certified as GAF Master Elite contractors because Dzen had such certification and supervised the crew. Centimark focuses on the finding by the trial court in *O'Donnell* that an advertisement in a newspaper, stating that the plaintiff " 'sells it, installs it, and guarantees the labor and materials,' "; id., 197; did not mean that the contractor personally would install the roofing material.

Centimark's reliance on *O'Donnell* is misplaced. The facts in *O'Donnell* were such that the defendants' reliance on the plaintiff's representations, if any, was unreasonable. Here, reliance was found to be reasonable. It may be unreasonable to think that on the facts presented, one person would do all the work. It is quite

another proposition, and quite reasonable, to think that one company will actually do the work. In this case, the contract provided that "[a]ll items listed in the scope of work will be completed by [Centimark and Dzen]." The parties were free expressly to contract that the work was to be performed by Dzen and not by relatively less qualified workers.

The court's finding that Village Manor reasonably relied on Centimark's representations that Dzen would be performing the work on the shingled portion of the roof was not clearly erroneous. The contract between Centimark and Village Manor stated that Centimark and Dzen would be completing the work. Westbrook testified that he represented to Rodowicz that Dzen would be performing the work on the shingled portion of the roof. Rzempoluch testified that he knew that Dzen would subcontract the work, but he did not inform any representative of Village Manor that subcontractors would do the work. Accordingly, we conclude that on the facts of this case, the court's finding that Centimark was liable for negligent misrepresentation was not clearly erroneous on the reliance issue.[3]

### B

### Fraudulent Misrepresentation

Centimark next claims that the court improperly found in favor of Village Manor on its counterclaim of fraudulent misrepresentation. We disagree.

"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact.

---

[3] *O'Donnell* refers to a finding by the trial court that it was the common practice in the roofing industry to subcontract some of the work. See *O'Donnell* v. *Rindfleisch*, 13 Conn. App. 198. This may be so and in many cases may be persuasive. Here, the court's findings on the specific facts of this case are not clearly erroneous, however.

... The party claiming fraud ... has the burden of proof. ... Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. ... A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. ... The essential elements of a cause of action in [fraudulent misrepresentation] are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." (Citations omitted; internal quotation marks omitted.) *Phillips* v. *Phillips*, 101 Conn. App. 65, 70–71, 922 A.2d 1100 (2007).

Centimark makes arguments with respect to fraudulent misrepresentation similar to those it made concerning negligent misrepresentation. Here, again, we conclude that the court properly declined to reach the same result as that in *O'Donnell* v. *Rindfleisch*, supra, 13 Conn. App. 194. With respect to the fraudulent misrepresentation counterclaim, the court additionally found that BHR's crew wore T-shirts bearing Dzen's name and that Thompson also attached a large magnetic sign to his truck bearing the name. Thompson admitted doing this so that customers would think that Dzen was performing the work on the roof. After reviewing the record, we conclude that the court's finding that Centimark was liable for fraudulent misrepresentation has support in the record and, accordingly, was not clearly erroneous.

## C

### CUTPA

Centimark next claims that the court improperly found in favor of Village Manor on its counterclaim alleging a violation of CUTPA. We disagree.

"CUTPA provides in relevant part that '[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' General Statutes § 42-110b (a). It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . .

"It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Seligson* v. *Brower*, 109 Conn. App. 749, 756–57, 952 A.2d 1274 (2008).

The court found that Centimark's conduct in representing to Village Manor on numerous occasions that Dzen would be performing the work on the shingled portion of the roof and failing to inform Centimark that

Dzen, in fact, would not be performing the work but would be subcontracting the work to a non-GAF Master Elite contractor constituted a deceptive act within the meaning of CUTPA. Centimark argues that it did not misrepresent to Village Manor that Dzen would be performing the work. The court's finding that Centimark's conduct constituted a deceptive act has support in the record and is not clearly erroneous.[4] Thus, the court properly concluded that Centimark had violated the provisions of CUTPA.

## II

## CENTIMARK'S CLAIMS AS TO DAMAGES OWED TO VILLAGE MANOR

On the breach of contract, negligence, breach of warranty, negligent misrepresentation and fraudulent misrepresentation counts of Village Manor's counterclaim, the court awarded Village Manor one award of damages. The court determined that award using the replacement cost of the shingled portion of the roof, which the court determined to be $139,670. The court reduced that award by $98,999.76, the contract price that Village Manor had not paid. The net award was $40,670.24. Centimark claims that the court improperly assessed damages using replacement cost. It alternatively argues that if the use of replacement cost was proper, the $40,670.24 award should be reduced by $12,000, which amount the court improperly included in replacement cost for flashing around the HVAC units. We disagree and affirm the $40,670.24 award.

---

[4] The court found Centimark's conduct to be both deceptive and unfair. "In order to prevail in a cause of action under CUTPA, the facts proved by the evidence must establish *either* unfair methods of competition [*or*] unfair or deceptive acts or practices . . . ." (Emphasis added; internal quotation marks omitted.) *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 567, 473 A.2d 1185 (1984). Because we determine that the court's finding that Centimark's conduct constituted a deceptive act was not clearly erroneous, we need not address Centimark's claim that the court's finding that Centimark's conduct also constituted an unfair act was clearly erroneous.

## A

### Mootness

We first address the issue of mootness. Village Manor takes issue with the fact that Centimark, when setting forth its argument concerning the damages award, referred only to the breach of contract count and failed to mention any other counts on which the court based the damages award. In its brief, Village Manor argues that even if this court agrees with Centimark's claim, no practical relief could be granted because Centimark makes its claim only with respect to the breach of contract count. Village Manor argues that the court awarded it the same amount of damages under both the breach of contract and negligence counts of its counterclaim but that Centimark's claims on appeal relate only to the court's award of damages with respect to Village Manor's breach of contract count and not the negligence count. It claims that even if this court agrees with Centimark's claim concerning the court's award of contract damages, Village Manor's negligence award in the same amount would still stand. Accordingly, it contends that Centimark's claim contesting the court's award of damages on the breach of contract counterclaim is moot. We disagree.

"Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow."

(Internal quotation marks omitted.) *Wilcox* v. *Ferraina,* 100 Conn. App. 541, 547–48, 920 A.2d 316 (2007).

The measure of damages for injury to realty is the same under theories of tort and breach of contract. "In determining the proper measure of damages for injury to land, [t]he legal effort . . . is to compensate the landowner for the damage done. . . . This is essentially true whether the injury is redressed under a theory of tort or breach of contract." (Citation omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.,* 245 Conn. 1, 59, 717 A.2d 77 (1998). The considerations set forth in *Willow Springs Condominium Assn., Inc.,* for using diminution in value as a measure of damages and, alternatively, cost of repairs as a measure of damages, apply to damages arising from contract actions and from tort actions. See *Mattegat* v. *Klopfenstein,* 50 Conn. App. 97, 106–108, 717 A.2d 276 (concluding that estimated repair costs used by court to determine damages rather than diminution in value was appropriate measure of damages for negligence claim based on damage to real estate), cert. denied, 247 Conn. 922, 722 A.2d 810 (1998).

The court and Village Manor treated the issue of damages on Village Manor's counts for breach of contract and negligence the same. Village Manor argued before the court that it was entitled to damages on its negligence count in the same amount claimed for its breach of contract count. The court concluded that "Village Manor [was] entitled to *the same damages* for its negligence claim as [it was] awarded for its breach of contract claim." (Emphasis added.) The court treated the breach of contract count as the bellwether claim that governed the measure of damages for negligence, breach of warranty, negligent misrepresentation and fraudulent misrepresentation. With respect to these other counts, the court's only discussion of damages

was in reference to the breach of contract count. The court simply awarded "the same damages" as it did for the breach of contract count on the negligence, breach of warranty, negligent misrepresentation and fraudulent misrepresentation counts. If the court's measure of damages on Village Manor's breach of contract count was improper, its measure of damages on Village Manor's counterclaims for negligence, breach of warranty, negligent misrepresentation and fraudulent misrepresentation likewise would be improper. Realistically, the court made one award of damages with respect to the aforementioned counts. If that one damages award was, in any way, improperly determined, relief could be granted to Centimark by reversing that award of damages. Accordingly, because practical relief can be granted on Centimark's claim, it is not moot.[5]

## B

## Damages

We first set forth our standard of review with respect to damages. "[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . [W]hether the decision of the trial court is clearly erroneous . . . involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light

---

[5] As we previously have stated, Centimark has not challenged on appeal the court's finding of liability with respect to the negligence count. It is with respect to this uncontested finding of liability that we address Centimark's claims regarding the damages award.

of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous. . . . A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 68–69, 717 A.2d 724 (1998).

1

### Replacement Cost

Centimark claims that the court improperly measured damages using the replacement cost because (1) Village Manor failed to introduce evidence that the cost of repairs did not exceed the former value of the property and that the repairs did not enhance the value of the property over what it was before it was damaged, and (2) the court properly should have measured damages using diminution in value. We disagree.

The following additional facts are relevant to our resolution of this issue. In assessing damages, the court found the testimony of Village Manor's expert witness, Michael Pascale, to be credible. Pascale was a project manager for the roof consulting firm H.B. Fishman and was hired by Rodowicz to examine problems with the roof. He testified that all of the 27,702 shingles would need to be lifted, examined and repaired as necessary, if total replacement of the shingles was to be avoided. Pascale testified that it would not be feasible to repair

the roof in that manner because of the extent of possible damage caused by lifting each shingle. He recommended instead that the shingles be removed and replaced. According to estimates Pascale obtained from three contractors, the cost to repair the roof was estimated to be $205,600, $274,100 and $324,831. In a July, 2005 report, Pascale estimated the cost to replace the roof at $127,670.

The court concluded that the shingled portion of the roof must be replaced because it would not be feasible to lift every single shingle to look for deficiencies without significantly damaging the existing shingles. It awarded Village Manor damages in the amount of $139,670, including $12,000 to flash around the HVAC units. Because Village Manor had not paid Centimark for the roof, the court reduced that award by the initial contract price of $98,999.76. It, therefore, awarded Village Manor $40,670.24 in damages.

a

Centimark also argues that the court improperly used the cost of repair as the measure of damages when the proper measure of damages is the diminution in value. We disagree.

We first set forth our standard of review. "In determining the proper measure of damages for injury to land, [t]he legal effort . . . is to compensate the landowner for the damage done. . . . This is essentially true whether the injury is redressed under a theory of tort or breach of contract. . . . The basic measure of damages for injury to real property is the resultant diminution in its value. . . . There is, however, a well established exception to this formula; such diminution in value may be determined by the cost of repairing the damage, provided, of course, that that cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the

property over what it was before it was damaged. . . . The cost of repairs, therefore, is a proxy for diminution in value caused by damage to property. Because these are, in effect, alternative measures of damages, the plaintiff need not introduce evidence of both diminution in value and cost of repairs." (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 59–60, citing *Whitman Hotel Corp.* v. *Elliott & Watrous Engineering Co.*, 137 Conn. 562, 573, 79 A.2d 591 (1951). "The permissive language of *Whitman Hotel [Corp.]* clearly leaves the selection of the repair measure in the trial court's discretion, limited only by the two attached provisos . . . . The cost of repairs, therefore, is a proxy for diminution in value caused by damage to property. Because these are, in effect, alternative measures of damages, the plaintiff need not introduce evidence of both diminution in value and cost of repairs." (Citation omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 59–60.

Accordingly, a trial court has the discretion, in the appropriate case, to choose to use the cost of repairs as the measure of damages.[6] *Ratner* v. *Willametz*, 9

---

[6] Centimark argues that replacing the roof involves unreasonable economic waste, and, therefore, the proper measure of damages is the diminished value of the property as expressed in the second portion of the formula in *Kevin Roche-John Dinkeloo & Associates* v. *New Haven*, 205 Conn. 741, 535 A.2d 1287 (1988). Our Supreme Court stated in that case: "For a breach of a construction contract involving defective or unfinished construction, damages are measured by computing either (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste." (Internal quotation marks omitted.) Id., 749.

The second component of this formula may well measure diminution in value. The court, however, did not measure damages on the basis of diminution in value and made no finding of economic waste. It was a valid exercise

Conn. App. 565, 586, 520 A.2d 621 (1987) (selection of repair measure within trial court's discretion). This discretion is "limited by only the [previously discussed] two provisos"; *Mattegat* v. *Klopfenstein*, supra, 50 Conn. App. 107; which are not present here. There is no evidence that the cost of replacing the roof exceeded the value of the property or that the replaced roof enhanced the value of the property over what it was before it was damaged. Accordingly, we conclude that the court properly applied the cost to repair the property, in this case, replacing the shingles, as the measure of damages.

b

Centimark argues that the court's use of replacement cost as the measure of damages was improper because Village Manor failed to introduce evidence that the cost of repairs did not exceed the former value of the property and that the repairs did not enhance the value of the property over what it was before it was damaged. Centimark contends that, accordingly, an award of only nominal damages is appropriate. We disagree.

We reiterate that "diminution in value may be determined by the cost of repairing the damage, provided, of course, that that cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was before it was damaged." (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 59.

---

of its discretion to measure diminution in value by using the cost of repair. See *Ratner* v. *Willametz*, 9 Conn. App. 565, 586, 520 A.2d 621 (1987). There was no request for an articulation regarding the absence of any finding as to economic waste, nor was there evidence of obvious economic waste, such as might appear in situations in which the cost of repair greatly exceeds the value of the premises.

There is no evidence that the cost to replace the shingled portions of Village Manor's roof exceeded the value of the property. In fact, there was evidence before the court that as of 2004, the buildings and land improvements at Village Manor were valued in excess of $2 million, while the cost of the roof replacement was $139,670, as found by the court.

There is no evidence that the cost of repairing the shingled portion of the roof enhanced the value of property over what it was before it was damaged. See id., 60 (proper for court to permit jury to consider cost of repair as alternative measure of diminution in value when no indication cost of repairs exceeded purchase price of property); *Allstate Ins. Co.* v. *Palumbo*, 109 Conn. App. 731, 745, 952 A.2d 1235 (2008) (plaintiff presented sufficient evidence to establish cost to clean or repair personal property despite defendant's claim that it produced no evidence cost of repairs less than value of items when no indication in evidence that cost of repairing items would enhance value of property over what it was before it was damaged); *Mattegat* v. *Klopfenstein*, supra, 50 Conn. App. 107 (court properly applied cost of repair as measure of damages where no evidence at trial that repairs would enhance value of property over what it was prior to damage). Bruce Darling, an expert witness for the third party defendant Dzen, testified that in the roofing industry, when there is an existing shingle roof, it is better to remove the existing shingle roof and install a new first layer than to overlay a second roof on the existing roof because of the ease in finding a leak and the ability to overlay a second roof. On cross-examination, Pascale was asked whether removing the first layer of roofing and installing a new first layer would constitute an improvement over having a roof with two layers. Pascale responded that although it would require more work to remove two layers of roofing, in the end, a properly installed

overlaid roof is the same as a new roof on a wood deck with no layer underneath. The court found Pascale's testimony to be fully credible. Furthermore, Village Manor presented testimony that the repairs undertaken were necessary for the damaged elements to conform to the building code. Pascale testified that the building code did not permit a roof with three layers. There was evidence before the court that replacing the existing roof was necessary to restore the roof to the condition it would have been in had Centimark performed as required under the contract. See, e.g., See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 61 (evidence indicating repairs necessary to restore property to condition it would have been in if construction performed as warranted and required by applicable governing regulations). "[W]hen the property injured may be repaired, if the repairs will substantially restore the property to its former condition, the cost of such repairs will ordinarily furnish proper proof of the loss . . . ." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Palumbo*, supra, 109 Conn. App. 746.[7]

## 2

## HVAC Units

The court, using replacement cost as its measure of damages, awarded Village Manor net damages in the amount of $40,670.24, which included $12,000 properly to flash around the HVAC units. Centimark argues, alternatively, that if the court otherwise used the proper

---

[7] It may be possible that a building with a roof with one layer of shingling is more valuable than a building with two layers because the next round of shingling may be less expensive. In this case, proper performance of the contract would have resulted in a double layer, while replacement results in a single layer. Had evidence been presented as to any specific difference in value, and had the evidence been credited, it may have been appropriate to reduce the award of damages accordingly. There was, however, no such evidence presented and credited.

measure of damages, then the damages award of $40,670.24 should be reduced by $12,000. Centimark argues that the court's award to flash around the HVAC units was improper because the court determined that Centimark was not required to flash the HVAC units as part of its contract with Village Manor. We disagree.

From the memorandum of decision, however, it is not entirely clear as to what the $12,000 award refers. The court stated that it awarded Village Manor "$139,670 in damages to *replace the roof*." (Emphasis added.) In its discussion of damages, it then explains that Village Manor sought, among other damages, $139,670 to replace the roof, which figure represented "$127,670 or $3.73 per square foot, Pascale's estimate to replace the roof, and an additional $12,000 *to properly flash around the HVAC units*." (Emphasis added.) The court referenced appendix fifteen of the plaintiff's exhibit 62A, which was the estimate prepared by Pascale for shingle removal and replacement. That budget estimate for shingle removal and replacement amounted to a total cost of $127,670. That estimate included an additional cost *to flash around the eight HVAC curbs properly*, which would cost between $1000 and $1500 for each of the eight HVAC curbs. It is not entirely clear whether the $12,000 was awarded to flash around the HVAC units properly, an award for which there is no accompanying finding of liability, or whether the amount was awarded as part of the replacement cost of the roof, in that the flashing would be done as part of the replacement task. If the latter, then it would not matter whether there was an independent finding of liability. No motion for articulation was filed on this basis. To the extent that the court's decision is ambiguous in this regard, it was Centimark's responsibility to seek to have it clarified. See Practice Book §§ 61-10 and 66-5. "In the absence of a motion for articulation, we read an ambiguous trial record to support, rather

than to undermine, the judgment." *St. John Urban Development Corp.* v. *Chisholm*, 111 Conn. App. 649, 653, 960 A.2d 1080 (2008).

This lack of clarity, however, does not necessarily affect our analysis of Centimark's claim. The sole basis Centimark states in its brief for reversal of the $12,000 award is that the award is inconsistent with the facts set forth in the memorandum of decision in that the court never found that Centimark was required to flash the HVAC units as part of its contract with Village Manor. This is not so. Although the court declined to find that Centimark improperly flashed around the HVAC units, it *did* find, however, that the contract required such flashing. In analyzing Village Manor's breach of contract count, the court found that during contract negotiations, the following additional language was added to the contract: "[A]nd flash rooftop units [with] [m]odified [m]embrance [t]ar ([r]oof [c]ement)." (Internal quotation marks omitted.) The court did not find, as Centimark contends, that Centimark was not required under the contract to flash the HVAC units; rather, it found that there was insufficient evidence that Centimark breached this contractual clause by failing to flash the HVAC units properly. On the basis of the argument presented by Centimark to this court, we do not reverse the award of $12,000.[8]

### III

### CENTIMARK'S THIRD PARTY COMPLAINT

We next turn to Centimark's claims with respect to the third party defendant, Dzen. Centimark claims that the court improperly calculated its indemnification

---

[8] Additionally, the appellant has the duty to present a record on which we can decide the issues. Here, as stated previously, the court's finding was not clear, and there was no request to articulate.

damages under the indemnification clause of the sub-contract agreement.[9] We agree.

We first set forth our standard of review. "When a party asserts a claim that challenges the trial court's construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Because a question of law is presented, review of the trial court's ruling is plenary . . . ." (Citation omitted; internal quotation marks omitted.) *WE 470 Murdock, LLC* v. *Cosmos Real Estate, LLC*, 109 Conn. App. 605, 608, 952 A.2d 106, cert. denied, 289 Conn. 938, 958 A.2d 1248 (2008). "The trial court has broad discretion in determining damages, and we will not overturn its decision unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly

---

[9] In count one of its third party complaint, Centimark sought indemnification on the basis of the breach of the subcontract agreement. The court concluded that Dzen did not breach the subcontract agreement because, after construction was completed, Centimark prevented it from correcting the defects. On appeal, Centimark claims that the court's conclusion with respect to count one was improper. We need not address this claim. Centimark prevailed on count two and was awarded indemnification damages on that count. Dzen has not cross appealed. The only issue before us, then, with respect to the third party complaint, was whether the award of damages under the indemnification clause was calculated properly.

erroneous." (Internal quotation marks omitted.) *Valentin* v. *Community Remodeling Co.*, 90 Conn. App. 255, 260, 876 A.2d 1252 (2005).

In this case, the court concluded that under the terms of the indemnification clause, Dzen was liable to indemnify Centimark for any damages that Centimark had to pay that arose out of Dzen's work.[10] The court noted that Centimark sought indemnification from Dzen for any judgment rendered in relation to deficiencies in the shingled portion of the roof and awarded Centimark $38,992, the price Centimark paid Dzen under the subcontract agreement between the parties.

On appeal, Centimark contends that the court properly should have awarded to it attorney's fees in addition to $139,670.[11] We agree.

[10] Dzen, in its appellate brief, argues that the court's analysis under the indemnification clause is misplaced because the claim in count two seeks indemnity damages not under the indemnification clause of the subcontract agreement but, rather, pursuant to common-law indemnification; see *Smith* v. *New Haven*, 258 Conn. 56, 66, 779 A.2d 104 (2001) (defining elements of common-law indemnification). We decline to consider Dzen's claim because Dzen failed to file a cross appeal. See Practice Book § 61-8; *Housing Authority* v. *Charter Oak Terrace/Rice Heights Health Center, Inc.*, 82 Conn. App. 18, 19 n.1, 842 A.2d 601 (2004).

Furthermore, we note that the issue of indemnification pursuant to the subcontract agreement was actually litigated at trial. "[I]t is true that ordinarily a court may not grant relief on the basis of an unpleaded claim. . . . That does not necessarily mean, however, that the absence of a particular claim from the pleadings automatically precludes a trial court from addressing the claim, because a court may, despite pleading deficiencies, decide a case on the basis on which it was actually litigated and may, in such an instance, permit the amendment of a complaint, even after the trial, to conform to that actuality. . . . Indeed, [our Supreme Court has] recognized that, even in the absence of such an amendment, where the trial court had in fact addressed a technically unpleaded claim that was actually litigated by the parties, it was improper for [this court] to reverse the trial court's judgment for lack of such an amendment." (Internal quotation marks omitted.) *Anderson* v. *Whitten*, 100 Conn. App. 730, 735–36, 918 A.2d 1056 (2007).

[11] Centimark argues that it is entitled to indemnification in the amount of $139,670, to the extent that the court's award of damages on Village Manor's claims are affirmed on appeal.

The indemnification clause of the subcontract agreement provides: "To the fullest extent permitted by [law], [s]ubcontractor agrees to indemnify, defend and hold harmless the [c]ontractor and [o]wner from and against all claims, damages, losses, liabilities and expenses (whether under a theory of negligence, strict liability, contract or otherwise) including attorney's fees, arising out of or resulting from (i) the performance of the [w]ork undertaken to be performed directly or indirectly by [s]ubcontractor hereunder . . . . The [s]ubcontractor's obligation under this paragraph shall extend beyond termination of this [a]greement." (Internal quotation marks omitted.)

The court improperly interpreted the terms of the indemnification clause when it awarded to Centimark $38,992, which represented the contract price Centimark had paid Dzen under the subcontract agreement. The indemnification clause does not provide that Dzen would indemnify Centimark from all claims, damages, losses, liabilities and expenses to the extent of the contract price between the parties. Rather, the unambiguous language of the indemnification clause provides that Dzen indemnify Centimark for "all claims, damages, losses, liabilities and expenses . . . arising out of or resulting from (i) the performance of the [work of this contract]." Dzen agreed to indemnify Centimark against all claims, damages, losses, liabilities and expenses provided that they grew out of the performance of the work of the subcontract.

The court found that under the agreements between the parties, Dzen's work included supplying the materials and providing installation of the shingled portion of the roof. The court found that the cost to replace the defective shingled roof was $139,670 and awarded that amount to Village Manor. Under the provisions of the indemnification clause, Centimark was entitled to

indemnification from Dzen for the amount that Centimark was required to pay Village Manor for the replacement of the shingled portion of the roof, which was $139,670. The court credited or offset that amount by $98,999.76, which was the amount that Village Manor owed to Centimark. The court properly subtracted the "credit" from the amount awarded to Village Manor because of Village Manor's failure to pay Centimark under the terms of their contract. That amount should not be credited to Dzen. Dzen was liable to Centimark to indemnify it for the defective installation of the shingled portion of the roof, and the replacement cost of that roof was $139,670. Had Dzen properly performed the contract, Centimark would have been paid $98,999.76 and would not have paid Village Manor anything. Because Dzen did not so perform, Centimark had to pay Village Manor $139,670. The amount Centimark had to pay for damages arising out of Dzen's work is the proper measure of damages in these circumstances.

Additionally, Centimark claims that the court properly should have awarded it attorney's fees under the indemnification clause of the subcontract agreement. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, where a specific contractual term provides for the recovery of attorney's fees and costs . . . . Additionally, an indemnitee is entitled to recover from an indemnitor, as part of its damages, attorney's fees, costs and expenses." (Citations omitted; internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 311, 685 A.2d 305 (1996). The indemnification clause expressly provides for the recovery of attorney's

fees. The court properly should have awarded Centimark attorney's fees.

We conclude that Dzen should have been ordered to indemnify Centimark for the amount of $139,670, plus reasonable attorney's fees.[12]

## IV

### VILLAGE MANOR'S CROSS APPEAL

We last turn to Village Manor's cross appeal. Village Manor claims that the court improperly concluded that it cannot recover its expert witness fees under CUTPA. We disagree.

The following additional facts are relevant to our discussion of Village Manor's cross appeal. The court found that Centimark violated CUTPA and awarded Village Manor $133,276.82 in attorney's fees and costs in bringing the action. The court, however, citing *Miller* v. *Guimaraes*, 78 Conn. App. 760, 783, 829 A.2d 422 (2003), declined to award Village Manor expert witness fees.

"It is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute." (Internal quotation marks omitted.) Id., 782. "Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008).

*Miller* is dispositive of this issue. In that case, we held that the trial court's award to homeowners of $1000 as taxable costs for an expert who was an attorney was improper in an action to recover damages under CUTPA because there was no statutory authority under General

---

[12] Centimark, of course, cannot transfer its liability for CUTPA damages to Dzen.

Statutes § 52-260 for such an award. *Miller* v. *Guimaraes*, supra, 78 Conn. App. 781–83. "[Section] 52-260, relating to witness fees, sets forth the court's authority to award expert witness fees in civil litigation. Within the statute, there is an enumeration of the categories of experts entitled to a discretionary award of expert witness fees." Id., 783. Expert witness fees for roofing consulting firms are not included within that enumeration. See id. Accordingly, we conclude that the court properly declined to award Village Manor expert witness fees with respect to its CUTPA claim.

The judgment is reversed with respect to the court's award of damages on Centimark's third party complaint against Dzen and the case is remanded with direction to award $139,670 in damages on the third party complaint and for further proceedings to determine an award of attorney's fees on the third party action. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.