## COPPOLA CONSTRUCTION COMPANY, INC.
## *v.* HOFFMAN ENTERPRISES LIMITED
## PARTNERSHIP ET AL.
## (AC 33102)

Beach, Espinosa and Flynn, Js.

Argued November 30, 2011—officially released March 13, 2012

*Fletcher C. Thomson,* with whom was *Lawrence G. Rosenthal,* for the appellant (plaintiff).

*Richard P. Weinstein*, with whom, on the brief, was *Nathan A. Schatz*, for the appellee (defendant Jeffrey S. Hoffman).

*Opinion*

BEACH, J. The plaintiff, Coppola Construction Company, Inc., appeals from the judgment rendered by the trial court granting the motion for judgment filed by the defendant Jeffrey S. Hoffman[1] and denying the plaintiff's motion for leave to amend its complaint. On appeal, the plaintiff claims that the court erred by granting the motion for judgment on count six of the third amended complaint following the court's granting of Hoffman's[2] motion to strike that count. We reverse, in part, the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. This case was commenced on or about December 9, 2009, with an application for prejudgment remedy by the plaintiff against Hoffman and Hoffman Enterprises Limited Partnership (Hoffman Enterprises). The plaintiff sought to recover money damages in connection with site work that the plaintiff had agreed by contract to perform for Hoffman Enterprises on several parcels of property owned by Hoffman Enterprises known as Hoffman Auto Park located in Simsbury. The operative complaint alleged six separate claims: counts one through five against Hoffman Enterprises for breach of contract, quantum meruit, unjust enrichment, tortious interference and unfair trade practices, respectively, and count six against Hoffman for negligent misrepresentation. The defendants filed a

---

[1] The defendants in this action include Jeffrey S. Hoffman and Hoffman Enterprises Limited Partnership. Only Jeffrey S. Hoffman is a party to this appeal.

[2] Hoffman and Hoffman Enterprises Limited Partnership, the other defendant in this action, which is not a party to this appeal, moved to strike three counts of the six count complaint. We are concerned with the motion to strike only insofar as it sought to strike count six.

motion to strike counts four, five and six, which the court denied with respect to counts four and five and granted with respect to count six.

In count six, the plaintiff alleged, in part, that "Hoffman entered into agreements with Signature Construction Services, [LLC] (Signature) to perform construction on his new residence in Rhode Island. The agreements with Signature were based, in part, upon Signature being the construction manager and agent for Jeffrey Hoffman's business interests in the Hoffman Auto Park expansion. . . . Upon information and belief, Jeffrey S. Hoffman received special pricing and below market rates for the construction of his residence in Rhode Island in exchange for inflating Signature's compensation through the Hoffman Auto Park facility [and other] valuable consideration. . . . Jeffrey S. Hoffman entered into the scheme to obtain lower bid estimates all in an attempt to have People's Bank fund the [Hoffman Auto Park construction] project initially and then to provide change orders after the fact to force the Bank into further financing. . . . Coppola was not aware of the scheme being perpetrated . . . and was promised by Jeffrey Hoffman that he would pay for all change orders and 'extras' that he ordered. Mr. Hoffman is now alleging that Signature was not his 'agent' for purposes of the construction of the Hoffman Auto Park and is, upon information and belief, stating that Signature did not have the authority to act on his or [Hoffman Enterprises'] behalf. . . . Coppola relied upon Jeffrey Hoffman's representations and those made by his agent, Signature, to its detriment when the costs of the change orders and extra work exceeded the Bank financing. Coppola relied upon the statements and actions of Jeffrey Hoffman that Signature was [Hoffman Enterprises'] agent for purposes of the construction, whether directly for [Hoffman Enterprises] or for Mr. Hoffman in his personal capacity. . . . The result of the scheme

between Hoffman and Signature directly resulted in Coppola suffering damages in that Hoffman could not obtain the funding from People's Bank to pay Coppola and thus forestall[ed] payments which have resulted in the severe economic harm to Coppola. . . . In addition, to the extent that Hoffman now claims that [Hoffman Enterprises] did not provide the authority to Signature to act for [Hoffman Enterprises], such statements were made by Hoffman with knowledge that such statements were false. Hoffman's actions and statements were made to Coppola to induce it to perform the work at the Project and Coppola relied upon the statements and actions of Hoffman to its detriment."

The court reviewed the parties' arguments. Hoffman argued that count six was really "a claim of breach of contract based upon the promises and representation of [Hoffman]" and that "when a party misrepresents another person to be his agent, that does not state a claim for misrepresentation but merely affords a factual basis for inferring that the putative agent had apparent authority to bind the principal who made the representation." The court noted that the plaintiff asserted that its claim that "Hoffman's misrepresentation as to Signature's authority to act for him and [Hoffman Enterprises], in relation to the Hoffman Auto Park construction project, was in fact a misrepresentation of fact, then known to be false, which it reasonably relied on to its detriment." The court found: "At no point, however, does [the plaintiff] specify how it ever relied upon that misrepresentation to its detriment except by agreeing to perform extra work on the project with Signature'[s] approval—in their words, as the defendants have asserted, by entering into and performing work under contracts which the defendants are bound to honor based upon Signature's approval . . . ." The court concluded that the count did not state a valid claim for negligent misrepresentation and

granted Hoffman's motion to strike that count. Pursuant to Practice Book § 10-44, Hoffman moved for judgment. The court granted Hoffman's motion for judgment and denied the plaintiff's motion to amend its complaint. This appeal followed.

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 252–53, 990 A.2d 206 (2010).

"Our Supreme Court has long recognized liability for negligent misrepresentation. . . . The governing principles [of negligent misrepresentation] are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused

to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 52, 19 A.3d 215 (2011). "Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." (Internal quotation marks omitted.) *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 518, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009).

The plaintiff asserts that count six of its complaint states a legally cognizable claim for negligent misrepresentation as to Signature's authority to act on behalf of Hoffman Enterprises.[3] It appears that the thrust of the plaintiff's allegations is that Hoffman misrepresented that Signature was the agent of Hoffman Enterprises, such that Hoffman Enterprises was obligated to pay for the change orders and extras. An examination of the count reveals that it sufficiently alleges a cause of action for negligent misrepresentation.

The plaintiff alleged in paragraph nine that Hoffman stated that "Signature was [Hoffman Enterprises'] and

---

[3] In its principal brief, the plaintiff argued that count six asserted a legally sufficient negligent misrepresentation claim on two grounds: negligent misrepresentation (1) regarding payment for services and (2) as to Signature's authority to act on behalf of Hoffman Enterprises. It appears that the plaintiff's first ground is based on the alleged statement by Hoffman that "*he* would pay for all change orders and 'extras' that he ordered," whereas the second ground involves "Hoffman's representations and those made by his agent, Signature . . . that Signature was [Hoffman Enterprises'] . . . agent," and thus Hoffman Enterprises would be obligated to pay for the work in the event that the bank did not provide financing. (Emphasis added.) In its reply brief, the plaintiff conceded that it could not prevail on the first ground. Accordingly, we do not address that argument.

his agent for purposes of the construction" and in paragraph eight that "Hoffman is now alleging that Signature was not his 'agent' for purposes of the construction of the Hoffman Auto Park and is, upon information and belief, stating that Signature did not have the authority to act on his or [Hoffman Enterprises'] behalf." It further asserted in paragraph eleven that "such statements were made by Hoffman with knowledge that such statements were false." These allegations directly and implicitly help to establish the elements that Hoffman made a misrepresentation of fact, i.e., that Signature had authority to act on behalf of Hoffman Enterprises and thus to obligate Hoffman Enterprises to pay for the work, that he knew or should have known was false.

The plaintiff also alleged in paragraph nine that it "relied upon Jeffrey Hoffman's representations and those made by his agent, Signature, to its detriment when the costs of the change orders and extra work exceeded the Bank financing." It alleged in paragraph two that Hoffman was "an officer of [Hoffman Enterprises] and a principal in the ownership of the various entities that comprise the Hoffman Enterprises the Phyllis Hoffman Land Trust, the owner of the Property wherein the Project is located" and in paragraph eight that it "was not aware of the scheme being perpetrated by Jeffrey S. Hoffman and Signature . . . ." These allegations provide support for the reasonableness of the plaintiff's reliance on the alleged misrepresentation. The plaintiff further alleged in paragraph ten that "[t]he result of the scheme between Hoffman and Signature directly resulted in Coppola suffering damages in that Hoffman could not obtain the funding from People's Bank to pay Coppola and thus forestall[ed] payments which have resulted in the severe economic harm to Coppola." This allegation, in conjunction with the allegation in paragraph nine that the plaintiff "relied upon Jeffrey Hoffman's misrepresentations . . . to its detriment when the costs of the change orders and extra

work exceeded the Bank financing," provides support for the plaintiff's claim that it reasonably relied on Hoffman's misrepresentation to its detriment because Hoffman Enterprises had not paid for the change orders and extras. Construing the complaint in the manner most favorable to sustaining its legal sufficiency, as we are required to do, a comparison between the elements of negligent misrepresentation and the allegations in count six reveals that the plaintiff has provided allegations that would support, if proven to be true, a cause of action for negligent misrepresentation.[4] Accordingly,

---

[4] Hoffman argues in his brief that "where the alleged 'misrepresentation' is based on a statement by a principal, or one who speaks for a principal, that another person is an agent of the principal, that allegation necessarily fails to state an actionable claim for misrepresentation. Rather, it merely provides a basis to bind the purported contracting party on a theory of apparent authority." This argument ignores the plaintiff's right to plead alternative causes of action based on the same facts. Practice Book § 10-25 ("[t]he plaintiff may claim alternative relief, based upon an alternative construction of the cause of action"); *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 245, 492 A.2d 164 (1985) ("[u]nder our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint"). Accordingly, regardless of whether the allegations in count six provide a factual basis for apparent authority, the plaintiff has alleged negligent representation. It does not follow, of course, that a plaintiff may recover twice for the same wrong; see *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 22 n.6, 699 A.2d 964 (1997); but a plaintiff is permitted to raise alternative theories of liability and may seek damages from multiple defendants. As discussed, we must construe the complaint in the manner most favorable to sustaining its legal sufficiency, and our comparison of the elements of negligent misrepresentation and the allegations in count six causes us to conclude that the count should not have been stricken.

For several reasons, we likewise find unpersuasive Hoffman's argument that "to allow a claim of negligent misrepresentation where the purported representation pertains to whether a putative agent had authority to bind the principal would turn every claim of apparent authority into a tort action for misrepresentation." Our Supreme Court has stated: "[A]pparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal. . . . The issue of apparent authority is one of fact to be determined based on two criteria. . . . First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. . . . Second, the party dealing with the

we conclude that the court erred by granting Hoffman's motion to strike count six.

The judgment is reversed only as to count six of the third amended complaint alleging negligent misrepresentation and the case is remanded with direction to deny the motion to strike as to count six and for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." (Internal quotation marks omitted.) *Gordon* v. *Tobias*, 262 Conn. 844, 850–51, 817 A.2d 683 (2003); see also 1 Restatement (Third), Agency § 2.03, p. 113 (2006). In contrast, as stated previously, "an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." (Internal quotation marks omitted.) *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, supra, 113 Conn. App. 518. Thus, in order for a claim premised on apparent authority also to state a cause of action for negligent misrepresentation, there must be, inter alia, a misrepresentation of a fact, and a plaintiff must establish that the defendant knew or should have known of the misrepresentation's falsity, neither of which is required for a contract claim premised on apparent authority. Additionally, liability based on apparent authority depends on the acts of the principal, whereas a plaintiff alleging negligent misrepresentation need not necessarily specify conduct on the part of a principal. Moreover, because negligent misrepresentation is a cause of action sounding in negligence, reasonable care is also an element. 3 Restatement (Second), Torts, Negligent Misrepresentation § 552 (1), pp. 126–27 (1977) ("[o]ne . . . is subject to liability . . . if he fails to exercise reasonable care or competence in obtaining or communicating the information"); compare 1 Restatement (Third), Agency, supra, § 2.03, comment (c), p. 117 ("To establish apparent authority, it is not necessary for a third party to establish fault on the part of the principal . . . . If apparent authority is present, it is irrelevant that its presence or continued presence eluded the principal's exercise of due care to prevent or defeat it."). Finally, tort remedies may be different from contract remedies, and damages may be sought from different parties.